Jimmie Lee JOHNSON, Appellant,

v.

The STATE of Texas.

No. 1915–98.

Court of Criminal Appeals of Texas,
En Banc.

Feb. 9, 2000.

Rehearing Denied May 3, 2000.

Raquel Galle, Seguin, for appellant.

Frank Follis, Asst. Dist. Atty., Seguin, Jeffrey L. Van Horn, Asst. State's Atty., Matthew Paul, State's Atty., Austin, for State.

---

## OPINION

MANSFIELD, J., delivered the opinion of the Court in which MEYERS, HOLLAND, WOMACK, & JOHNSON, J.J., joined.

After a jury trial in Gonzales County, appellant, Jimmie Lee Johnson, was convicted of two counts of aggravated sexual assault. *Johnson v. State*, 978 S.W.2d 703 (Tex.App.—Corpus Christi 1998). The jury recommended that appellant pay a $10,000 fine and serve a term of life imprisonment, and judgment was rendered accordingly. On direct appeal to the Thirteenth Court of Appeals, appellant challenged the factual sufficiency of the evidence after asserting that the State failed to prove an essential element of the offense charged. Specifically, appellant argued that the State failed to show that appellant was the person responsible for carrying out the aggravated sexual assault. In a two-member majority opinion, the Court of Appeals held that, while the State proved a rape did occur, the evidence was factually insufficient to prove beyond a reasonable doubt that appellant was the guilty party, and a "manifest injustice" would occur if this conviction was allowed to stand.[1] *Johnson v. State*, 978 S.W.2d at 707.

The District Attorney and the State Prosecuting Attorney each filed petitions for discretionary review. The two questions presented ask this Court to determine (1) whether the *Clewis* factual sufficiency standard of review is still valid and, (2) if so, whether the Court of Appeals properly applied the correct standard of review in this case. See *Clewis v. State*, 922 S.W.2d 126 (Tex.Crim.App. 1996). The Court of Criminal Appeals, while not permitted to conduct a de novo factual sufficiency review, can be called upon to determine whether the Court of Appeals applied the correct standard of

---

1. The third member of the panel dissented on this point by writing that, although this case presented a "close call," after appropriate consideration of all the available evidence and

after providing the appropriate deference to the jury's findings, "the evidence was not so overwhelming such that the jury's verdict . . . was 'manifestly unjust.'"

review and considered all of the relevant evidence. *Cain v. State,* 958 S.W.2d 404, 408 (Tex.Crim.App.1997). This Court's only recourse in the event of an improper application of the factual sufficiency review is to reverse the Court of Appeals decision and remand, with instructions, for the appropriate review. *Ibid.*

### The Relevant Facts

The following represents, unless indicated otherwise, the uncontradicted facts as to what occurred on or about November 16, 1992. After working the 3:00 p.m. to 11:00 p.m. shift at Gonzales Memorial Hospital, the victim of this assault, K__C__, drove into the parking lot outside her apartment. Before she could turn off the car's engine, a man dressed entirely in black and wearing a ski mask and gloves, opened her car door, forced his way into the back seat, and directed her to drive from the parking lot. Believing that her assailant was armed and potentially violent, K__ C__ complied, and she was directed to a local community center outside the Gonzales city limits. Once there, the victim was blindfolded, her hands and ankles were bound, and she was forced into the passenger's seat. Her assailant began driving and proceeded to an even more remote location in the county.[2] K__ C__ was then untied, undressed, and raped. During the assault, the assailant ordered K__ C__ to her knees and demanded oral sex. At this point, he removed his mask and left it off for the duration of the crime. Although the headlights to the car were left on, the assailant never stood directly in front of the lights, so K__ C__ never got a lengthy, unobstructed view of his face. She believed at one point, however, that she was able to briefly glimpse her attacker's face, but could still only provide police with scant details of his overall appear-

ance. She described him as an uncircumcised[3] African–American, standing approximately five feet, nine inches tall with a medium build and a flat stomach.

After the assault, K__ C__ was driven back to Gonzales but by a different route. She was dropped off at a hotel close to her home, and the police were notified. Investigators discovered later that the victim's car had been returned to her apartment's parking lot. It was impounded and examined for possible evidence.

Investigators began tracking down possible suspects from the area. K__ C__ looked through several photo line-ups but was unable to positively identify the perpetrator. At one point, however, she was shown a line-up that contained appellant's picture and, while she did not positively identify appellant, she told the sheriff that the eyes of the man in that picture were "similar" to the eyes of the man who had raped her. Additionally, shortly after the attack, K__ C__ was driven to Austin to describe her assailant to a sketch artist for the Texas Department Public Safety. This collaboration produced a composite sketch that, in the victim's opinion, bore a resemblance to appellant's face. However, a defense witness who had known appellant for most of his life stated that, in her opinion, the sketch did not bear a reasonable likeness.

Appellant's arrest for this crime did not occur until August 31, 1994, almost two years after the attack. A month after his arrest, appellant escaped from the Gonzales County Jail. He remained at large for two months before being apprehended near Dallas. The State used evidence of appellant's escape to help establish his guilt in this crime. See *Rumbaugh v. State,* 629 S.W.2d 747, 752 (Tex.Crim.App. 1982) (evidence of escape from custody or

---

**2.** It took about a week before the Gonzales County Sheriff was able to determine the exact location where this assault took place, and over the next few months investigators were able to discover and recover evidence from the site (blood stains, victim's property, etc.).

**3.** A jail guard who had helped conduct a strip search of appellant testified that appellant was uncircumcised.

flight to avoid arrest can be admissible on the issue of guilt).

Due to the circumstances of the abduction and the sequence of events from that night, the Gonzales County Sheriff hypothesized it was likely that the individual responsible for the crime was intimately familiar with the areas where the abduction occurred and where the rape took place. Prosecutors established that appellant lived within a half-mile of the victim's apartment and determined that he had spent at least part of his boyhood years in the remote and sparsely populated area where the assault occurred.

The State also relied upon DNA evidence taken from the victim's dress to link appellant to the assault. The State's expert determined that appellant was within the 8 1/2% of the black male population that could have contributed the DNA found in the sperm extracted from the dress.[4] In rebuttal, however, a defense expert testified that based on his calculations, appellant is within the 26% of the black male population that could have produced the sperm.

The State also relied on an in-court identification by the victim to establish that appellant was her attacker. During direct examination, the victim was asked to describe her attacker, and admitted, because of the conditions and her state of mind, her identification could not be absolutely certain:

PROSECUTOR: ... can you describe for this jury the man that did this to you? You know he was a black man?
WITNESS: He was a black man.
PROSECUTOR: Do you have any idea how tall he was?
WITNESS: Like I said, maybe like 5'9", something like that. He is black. He has a flat—his tummy is flat and I could tell that he isn't circumcised.
PROSECUTOR: You saw his face briefly when you were out there?

WITNESS: I believe I saw his face.
COURT REPORTER: I'm sorry.
WITNESS: I believe that I saw his face.
PROSECUTOR: K__ C__, have you had an opportunity to look at this defendant ... ?
WITNESS: Pardon me?
PROSECUTOR: Have you had a chance to look at this defendant ... ?
WITNESS: Yes, sir.
PROSECUTOR: Do you believe or do you know whether or not that is the man that sexually assaulted you in November of 1992?
WITNESS: I cannot tell a hundred percent that it is him, but I am positive.
PROSECUTOR: I'm sorry?
WITNESS: I'm positive that it is him.
PROSECUTOR: But you are not a hundred percent positive?
WITNESS: No, sir.
PROSECUTOR: Why can't you be a hundred percent positive?
WITNESS: It was dark. I was blindfolded. I was so scared. He had a ski mask on most of the time. I didn't take ·a look at him very good. I was just so scared. I don't think I would have a chance to identify him. I thought I was going to die.

During subsequent cross-examination by defense counsel concerning uncertainty about the shade of her assailant's skin, the victim continued:

WITNESS: Like I said before, I cannot tell you exactly a hundred percent that it is [appellant], but something in his eyes.
DEFENSE COUNSEL: Something about [appellant's] eyes?
WITNESS: Yes, ma'am.
DEFENSE COUNSEL: Is it possible ... that you had seen a picture of [appellant] before?

4. In other words, approximately one out of twelve people in the black population would have the particular genetic type extracted from the DNA sample.

WITNESS: I believe that I did.

DEFENSE COUNSEL: And when was that?

WITNESS: When I saw lots of pictures, many different times after that. I cannot tell when that I saw his picture.

DEFENSE COUNSEL: Do you know who it was that showed it to you?

WITNESS: Investigator Reyna showed them to me; the Sheriff at least twice.

DEFENSE COUNSEL: Did you ever look at his picture when Investigator Reyna showed it to you and say, "This is the man"?

WITNESS: They never told me who—which one.

DEFENSE COUNSEL: I am talking about did you ever say, "This is the man," to detective-investigator Reyna?

WITNESS: No.

DEFENSE COUNSEL: And did you ever tell the Sheriff, "This is the man"?

WITNESS: No.

The defense, aside from disputing the State's DNA evidence, called a handful of other witnesses. In an attempt to discredit the victim's in-court identification of appellant, one defense witness told of a time the victim described her assailant as being tall, having a slender build, very dark skin, and long, greasy hair. This is a description contrary to her previous accounts. An expert on hair analysis testified that three foreign hairs recovered from the victim could not be matched with sample hairs taken from appellant. Another witness testified that while appellant's hair style never matched the victim's description of her attacker, the brother of appellant did wear a hairstyle similar to the description she provided.[5]

The Thirteenth Court of Appeals reversed appellant's conviction on the grounds of factual insufficiency. The Court of Appeals focused on the victim's less-than-certain identification of appellant as the primary reason why the conviction could not stand, saying "[t]he in-court identification was not clear and unequivocal." The additional evidence used to incriminate appellant—the DNA match, appellant's familiarity with the area where the assault occurred, the fact he lived relatively close to the victim's home, the fact he was uncircumcised, and the fact appellant escaped from jail while awaiting trial, could, in the opinion of the court, "all apply to many people other than him."[6]

We granted the State's petition for discretionary review to (1) ascertain the continued validity of an appellate court's authority to conduct a factual sufficiency review and (2) determine if that standard of review was properly applied in the case at bar. Specifically, the State Prosecuting Attorney's office presents us with the arguments that the present factual sufficiency standard of review has proven "unworkable," and, especially in light of our decision in *Cain v. State*, 958 S.W.2d 404, there exist only negligible differences between a legal and factual sufficiency review. We disagree with the proposition that the factual sufficiency review is "unworkable," as it is generally applied, and we also disagree that the Court of Appeals conducted an improper factual sufficiency review.

### The Factual Sufficiency Standard of Review

#### A.

As this Court stated in *Clewis*, and has continued to state in its progeny, the Courts of Appeals are constitutionally empowered to review the judgment of the trial court to determine the factual sufficiency of the evidence used to establish the elements of an offense. *Cain v. State*, 958 S.W.2d at 408; *Clewis v. State*, 922 S.W.2d at 129–30. In determining the factual suf-

---

5. Police looked into the possible involvement of appellant's brother in the assault but eliminated him as a possible suspect.

6. We are uncertain how appellant's escape from jail could be considered applicable to another individual's guilt.

ficiency of the elements of the offense, the reviewing court "views all the evidence without the prism of 'in the light most favorable to the prosecution,' [i.e., views the evidence in a neutral light,] and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis v. State*, 922 S.W.2d at 129. The court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact. *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996), *cert. denied*, 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997). "In conducting its factual sufficiency review, an appellate court reviews the fact finder's weighing of the evidence and is authorized to disagree with the fact finder's determination." *Clewis v. State*, 922 S.W.2d at 133. This review, however, must employ appropriate deference to prevent an appellate court from substituting its judgment for that of the fact finder, and any evaluation should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility given to witness testimony. *Jones v. State*, 944 S.W.2d at 648.

■ To ensure that this proper standard of review has been followed and to ensure that a reviewing court is not merely usurping the role of the fact finder, certain procedural requisites have been erected. *Clewis v. State*, 922 S.W.2d at 135–36; *Meraz v. State*, 785 S.W.2d 146, 154 (Tex. Crim.App.1990); *Pool v. Ford Motor Company*, 715 S.W.2d 629, 635 (Tex.1986). When reversing on insufficiency grounds, the appellate court should detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient. The opinion should state in what regard the contrary evidence greatly outweighs the evidence in support

of the verdict. *Clewis v. State*, 922 S.W.2d at 135.

■ This Court continues to recognize the constitutionally mandated authority vested in appellate courts to conduct a factual sufficiency review of the elements of an offense.[7] See *Cain v. State*, 958 S.W.2d at 408; *Clewis v. State*, 922 S.W.2d at 131–32; Tex. Const. art. V, § 6. It is also now beyond dispute that determining the legal and factual sufficiency of evidence requires the implementation of separate and distinct standards. A legal sufficiency review calls upon the reviewing court to view the relevant evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Mason v. State*, 905 S.W.2d 570, 574 (Tex. Crim.App.1995), *cert. denied*, 516 U.S. 1051, 116 S.Ct. 717, 133 L.Ed.2d 670 (1996). In contrast, a factual sufficiency review dictates that the evidence be viewed in a neutral light, favoring neither party. *Clewis v. State*, 922 S.W.2d at 134. In conducting a factual sufficiency analysis, the reviewing court "does not indulge inferences or confine its view to evidence favoring one side of the case. Rather it looks at all the evidence on both sides and then makes a predominantly intuitive judgment. . . ." William Powers and Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence*," 69 Tex. L.Rev. 515, 519 (1991). The United States Supreme Court, too, has recognized that, while differences between the two standards may become difficult to discern, members of the judiciary (trial and appellate) have sufficiently demonstrated the ability to distinguish legally insufficient evidence from evidence that rationally supports a verdict. *Tibbs v. Florida*, 457 U.S.

---

7. This includes the authority of the Court of Criminal Appeals to conduct a factual sufficiency review of those cases brought to it upon direct appeal, i.e., capital cases. See

*Santellan v. State*, 939 S.W.2d 155 (Tex.Crim. App.1997); *Jones v. State*, 944 S.W.2d 642 (Tex.Crim.App.1996).

31, 102 S.Ct. 2211, 2219–20, 72 L.Ed.2d 652 (1982).[8]

The assertions of the State Prosecuting Attorney's office notwithstanding, we recognize that differences do exist between a factual sufficiency review of the evidence and a legal sufficiency review. After extensive investigation into hundreds of opinions that have conducted factual sufficiency reviews, there exist no indications the standard has become "unworkable," especially to the degree this Court would feel justified in overruling existing precedent.

To support its argument that no difference exists between criminal legal and factual sufficiency review, the State Prosecuting Attorney's (S.P.A.) office relied on its interpretation of our decision in *Cain v. State*, 958 S.W.2d 404. Specifically, the S.P.A. argues *Cain* mandates absolute deference to the fact finder. If, as the State contends, a reviewing court was to accord absolute deference to the fact finder's determinations, then a factual sufficiency determination would, no doubt, become the functional equivalent of a legal sufficiency review. Absolute deference is not the standard, however, and *Cain* can not and should not be read to require as much. *Cain* was a case heavily dependent upon eyewitness testimony, testimony that oftentimes was in direct conflict. Therefore,

the evaluation of eyewitness credibility and demeanor was crucial in determining the appropriate verdict, and, as *Cain* recognized, this was a job best suited to the fact finder.

The degree of deference a reviewing court provides must be proportionate with the facts it can accurately glean from the trial record. A factual sufficiency analysis can consider only those few matters bearing on credibility that can be fully determined from a cold appellate record. Such an approach occasionally permits some credibility assessment but usually requires deference to the jury's conclusion based on matters beyond the scope of the appellate court's legitimate concern.[9] See George E. Dix & Robert O. Dawson, 42 *Texas Practice—Criminal Practice and Procedure* § 36.69 (Supp.1999). Unless the available record clearly reveals a different result is appropriate, an appellate court must defer to the jury's determination concerning what weight to give contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered. This evidence is then accorded the appropriate consideration by the reviewing court in the context of its

**8.** The United States Supreme Court and the vast majority of courts across the nation apply different terms than Texas courts when it comes to considering the sufficiency of the evidence. Elsewhere, the equivalent of determining legal sufficiency is often referred to as examining the "sufficiency of the evidence," and the companion term to factual sufficiency is referenced as reviewing the "weight of the evidence." However, there appears to be no substantive differences between these terms, and this Court has treated them interchangeably. See *Clewis v. State*, 922 S.W.2d at 136; *Meraz v. State*, 785 S.W.2d 146, 156 (Tex. Crim.App.1990).

**9.** This principle of appropriate jury deference is a concept understood and adhered to in many jurisdictions, including those advocating a factual sufficiency, or weight of the evidence, review. "Credibility determinations are properly left to the fact finder, as it is that entity which has the opportunity to

examine those tell-tale signs of credibility—such as the physical appearance, demeanor, and cadence of speech of the witness—which are unavailable to an appellate court on the face of a cold record." *Commonwealth v. Williams*, 554 Pa. 1, 720 A.2d 679, 684 (1998). Absent exceptional circumstances, issues of witness credibility are for the jury, and the reviewing court may not substitute its view of the credibility for the constitutionally guaranteed jury determination. *People v. Lemmon*, 456 Mich. 625, 576 N.W.2d 129, 137 (1998). Professors Wright and Miller, writing in reference to federal jurisprudence, express the view that, although a reviewing court does not sit to approve miscarriages of justice, it should have a decent respect for the collective wisdom of the jury and accept the verdict in most cases. C. Wright and A. Miller, *11 Federal Practice and Procedure* § 2806 at 49 (1973).

overall analysis of the relevant evidence. The Court of Appeals in *Cain* was unable to rely on the trial record and determine, with any degree of certainty, the believability or veracity of the witnesses. In the case we now consider, the record revealed no reason for an appellate court to question the veracity or honesty of the victim in this case. However, what the record did reveal, and what the Court of Appeals did recognize, was that the accuracy of the victim's identification of appellant was questionable because of the adverse conditions that existed during her brief and obstructed view of the assailant.

■ In conclusion, the reviewing court must always remain cognizant of the fact finder's role and unique position, a position that the reviewing court is unable to occupy. The authority granted in *Clewis* to disagree with the fact finder's determination is appropriate only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice. Otherwise, due deference must be accorded the fact finder's determinations, particularly those determinations concerning the weight and credibility of the evidence. *Jones v. State*, 944 S.W.2d at 648–49.

### B.

Having addressed the arguments of the State Prosecuting Attorney, we now determine whether the Court of Appeals applied the correct standard in its factual sufficiency review of the elements in this case. As a corollary to this matter, it is necessary to first consider the scope of the *Clewis* factual sufficiency review.

In deciding *Clewis* and its accompanying standard of review, this Court adopted the Third Court of Appeals' analysis in *Stone v. State*, 823 S.W.2d 375 (Tex.App.—Austin 1992, pet. ref'd, untimely filed). The court in *Stone* had applied the civil factual sufficiency standard of review to criminal

cases, and we agreed this was the proper analysis, thus distinguishing it from the legal sufficiency standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. What is unclear, however, is whether the *Clewis* opinion adopted the civil factual sufficiency standard in toto or only in part.

Historically, courts and academicians have recognized that the civil factual sufficiency standard of review consists of two separate elements. In civil matters, the Courts of Appeals are empowered to consider and weigh all the evidence in the case and set aside the verdict and remand the cause for a new trial if it concludes that (1) the evidence is insufficient or if (2) the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust, regardless of whether the record contains some evidence of probative force in support of the verdict. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). When reversing for factual insufficiency the Court of Appeals must detail all the evidence relevant to the issue and clearly state why the jury's finding is either factually insufficient *or* is so against the great weight and preponderance of the evidence that it is manifestly unjust. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (1998), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998); *Ellis County State Bank v. Keever*, 888 S.W.2d 790, 794 (Tex.1994).

Legal scholars also recognize that "factual sufficiency points of error are designated as 'insufficient evidence' points or 'great weight and preponderance of evidence' points ... *depending on whether the complaining party had the burden of proof.* Although both points are classified generally as 'insufficiency evidence' points, they are distinct." [10] W. Wendell Hall,

---

10. Civil courts, by their own admission, often use these terms identifying the two elements

interchangeably and claim the distinction is merely semantical with no substantive differ-

*Revisiting Standards of Review in Civil Appeals*, 24 St. Mary's L.J. 1045, 1137 (1993) (emphasis added). "If a party is attacking the factual sufficiency of an adverse finding on an issue to which she did not have the burden of proof, she must demonstrate that there is insufficient evidence to support the adverse finding. In reviewing an insufficiency of the evidence challenge, the court of appeals must first consider, weigh, and examine all of the evidence that supports and that is contrary to the jury's determination. Having done so, the court should set aside the verdict only if the evidence standing alone is 'so weak' as to be clearly wrong and manifestly unjust." *Id.* at 1138. Alternatively, a party attacking a jury finding concerning an issue upon which he had the burden of proof must demonstrate that the adverse finding is actually against, i.e., outweighed by, the great weight and preponderance of the available evidence. *Ibid.* See also William Powers and Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence*," 69 Tex. L.Rev. 515, 519 (1991) ("[t]he preferred terminology has the proponent claim that an unfavorable [negative] finding should be set aside because it is 'contrary to the great weight and preponderance of the evidence,' and has the opponent claim that an unfavorable [affirmative] finding was based on insufficient evidence.").

While the civil factual sufficiency review encompasses insufficient evidence claims and great weight and preponderance claims (albeit now in an amalgamated analysis), it has been unclear whether this Court in *Clewis* adopted the "insufficient evidence" prong of the civil factual sufficiency review. As *Clewis* reads in its literal sense, a point which at least one Court of Appeals decision has recognized,[11] this Court explicitly addressed only the second element of the civil factual sufficiency standard, i.e., the great weight and preponderance of the evidence standard. This is the standard properly utilized when an appellant, for example, had the burden of proving his affirmative defense by a preponderance of the evidence, and on appeal he hopes to demonstrate that the state of the evidence preponderates greatly against the jury's finding. See *Ex Parte Schuessler*, 846 S.W.2d 850 (Tex.Crim.App.1993); *Meraz v. State*, 785 S.W.2d at 146. But is only the great weight and preponderance standard to be applied when an appellant contests the factual sufficiency of an issue in which the State possessed the burden of proof?

▉▉▉▉ The Court of Appeals in the case at bar decided that the State presented insufficient evidence to satisfy the identity element of the offense and reversed appellant's conviction. *Johnson v. State*, 978 S.W.2d at 707 (the evidence is not factually sufficient to prove beyond a reasonable doubt that [appellant] is the guilty party). In other words, in deciding that the evidence indicating appellant was the perpetrator was insufficient so that it could not support the conviction, the Court of Appeals applied the half of the factual sufficiency formulation that this Court did not specifically address in *Clewis*.[12] We

---

ences. See *Stone v. State*, 823 S.W.2d 375, 380–81 (Tex.App.—Austin 1992, pet. ref'd, untimely filed). However, at least two legal scholars feel this failure to make a distinction can cause confusion. William Powers and Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence*," 69 Tex. L.Rev. 515, 519 (1991). And in the criminal context, with the accompanying beyond a reasonable doubt burden of proof, there may truly be a difference of substance as recognized by at least one jurist. *Mata v. State*, 939 S.W.2d 719, 729 (Tex.App.—Waco 1997) (Vance, J., concurring) ("Even if the difference is seman-

tical in civil cases, my view is that the difference is substantive in the criminal context because of the State's greater burden of proof at trial.").

11. *Scott v. State*, 934 S.W.2d 396, 398–99 (Tex.App.—Dallas 1996, no pet.) (in adopting the civil standard of review to criminal cases ... the Court of Criminal Appeals focused exclusively on the second prong).

12. Research into those Courts of Appeals cases applying the factual sufficiency standard indicates, despite the arguably restricted

conclude the Court of Appeals was correct in this respect, and the appropriate scope of the *Clewis* criminal factual sufficiency review does, in fact, encompass both formulations utilized in civil jurisprudence, i.e., that evidence can be factually insufficient if (1) it is so weak as to be clearly wrong and manifestly unjust or (2) the adverse finding is against the great weight and preponderance of the available evidence. Because the State always carries the burden of proof to establish the elements of a criminal offense at trial, an appellant's points of error challenging the sufficiency of the evidence used to establish the elements of the charged offense could claim that the evidence used to establish the adverse finding was so weak as to be factually insufficient. This is the most equitable approach, especially given the fact criminal defendants are not under any obligation to present evidence on their behalf and usually rely, instead, on forcing the State to prove its case beyond a reasonable doubt.[13] Alternatively, in the event a defendant does muster contrary evidence, this standard of review allows him, if he so chooses, to present the argument on appeal that his evidence greatly outweighed the State's evidence to the extent that the contrary finding is clearly wrong and manifestly unjust. We hold, therefore, that our opinion in *Clewis* is to

be read as adopting the complete civil factual sufficiency formulation. Borrowing in part from Justice Vance's concurring opinion in *Mata v. State,* 939 S.W.2d 719, 729 (Tex.App.—Waco 1997, no pet.), the complete and correct standard a reviewing court must follow to conduct a *Clewis* factual sufficiency review of the elements of a criminal offense asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. Adoption of this complete standard allows us to remain true to one of the stated goals of *Clewis,* harmonization, when appropriate, of civil and criminal jurisprudence, and it recognizes the State's burden at a criminal trial is proof beyond a reasonable doubt.

 Having decided that the Court of Appeals correctly incorporated the true scope of a criminal factual sufficiency review of the elements of an offense, we must determine whether its review in the case at bar was properly performed. *Clewis* directs a reviewing court to presume that the evidence supporting the jury's verdict was legally sufficient. *Clewis v. State,* 922 S.W.2d at 134. Though reason-

language of *Clewis,* that many analyses have taken both formulations of the civil factual sufficiency standard into account. The Fifth Court of Appeals in *Scott v. State,* 934 S.W.2d 396 (Tex.App.—Dallas 1996, no pet.), conducted its review under both elements of the civil factual sufficiency review, but recognized that this Court only discussed the "second prong," and it has continued to apply the full civil factual sufficiency standard in subsequent cases. See *Cardenas v. State,* 971 S.W.2d 645, 649 (Tex.App.—Dallas 1998, pet. ref'd); *Johnson v. State,* 959 S.W.2d 284, 289 (Tex.App.—Dallas 1997, pet. ref'd). Other Courts of Appeals have proceeded in a similar fashion by holding that an appellant's claim must fail because adequate evidence was, in fact, presented by the State to sufficiently prove an element of the offense charged. *Gowans v. State,* 995 S.W.2d 787 (Tex.App.—Hous. (1st Dist.) 1999. no pet. h.) (the record contains sufficient evidence that appellant

was intoxicated at the time of the accident); *Thornton v. State,* 994 S.W.2d 845 (Tex.App.—Fort Worth 1999, no pet. h.) (the evidence supporting the judgment was not so weak as to be manifestly unjust or wrong); *Loudermilk v. State,* 993 S.W.2d 382 (Tex.App.—Eastland 1999, no pet. h.) (testimony that vehicle received extensive damage and that appellant left the scene of the accident without giving the information required was both legally and factually sufficient to support the jury's verdict). See also *Paez v. State,* 995 S.W.2d 163, 166–67 (Tex.App.—San Antonio 1999, no pet. h.).

13. Appellate courts must be persistently mindful that this review differs from a legal sufficiency determination in that while conducting its factual sufficiency review the court must consider *all* of the evidence in a neutral light favoring neither party.

able minds could differ whether the evidence truly is insufficient to warrant reversal of the conviction, this case does seem to present a situation in which there is evidence capable of satisfying any legal sufficiency challenge; i.e., viewed in a light favorable to the verdict, the DNA evidence, the victim's in-court identification of appellant, and appellant's intimate familiarity with the locations of the abduction and assault, all satisfy the legal sufficiency standard of review. However, in the context of a factual sufficiency review, the evidence, considered as a whole, may *arguably* not rise to the level of satisfying the State's burden of establishing beyond a reasonable doubt that appellant was the perpetrator. To make this determination, a complete and detailed examination of all the relevant evidence is required. If the reviewing court determines that a manifest injustice has occurred, and it would, therefore, be improper to defer to the fact finder's decision, then the reviewing court must provide a clearly detailed explanation of that determination that takes all of the relevant evidence into consideration. *Cain v. State*, 958 S.W.2d at 407. This high degree of specificity acts as a check upon the reviewing court and prevents it from substituting its judgment for that of the jury. *Clewis v. State*, 922 S.W.2d at 135. This Court is mindful of the fact that, just as a Court of Appeals is not empowered with the right to substitute its judgment for that of the fact finder's, the Court of Criminal Appeals shall not substitute its judgment for that of the Court of Appeals.[14] Regardless of whether we agree with the result, this Court is called upon to determine only whether the Court of Appeals correctly applied the factual sufficiency standard of review and properly considered all of the relevant evidence. *Cain v. State*, 958 S.W.2d at 408.

The Court of Appeals' opinion in this matter detailed the relevant evidence and determined the accuracy of the victim's in-court identification could not shoulder sufficient reliability to establish beyond a reasonable doubt that appellant carried out the assault. We have reviewed the Court of Appeals' analysis and can find no fault in its application of the factual sufficiency review and affirm its decision to reverse and remand the case for further proceedings.

McCORMICK, P.J., dissented with an opinion, in which KELLER & KEASLER, J.J., joined.

McCORMICK, P. J., delivered a dissenting opinion in which KELLER and KEASLER, JJ., joined.

I respectfully dissent. We should seize this opportunity to remove the judicially-inflicted *Clewis* opinion[1] from the body of Texas jurisprudence.

Contrary to principles of *stare decisis*[2] and the clear legislative intent of the applicable statutes,[3] *Clewis* adopted for criminal cases a civil "factual sufficiency" evidentiary standard which *Clewis* had to modify to

---

14. True to Judge Meyers' pronouncement in *Clewis* that reversals based on factual sufficiency reviews should be "most uncommon," *Clewis v. State*, 922 S.W.2d at 151 (Meyers, J. concurring), this is one of the rare opportunities this Court has had to directly consider a Court of Appeals' decision that evidence was factually insufficient. We are confident that Judge Meyers' prediction remains firm, and this opinion will not alter to any noticeable degree the amount of reversals of criminal convictions obtained after a factual sufficiency review.

1. *Clewis v. State*, 922 S.W.2d 126 (Tex.Cr.App. 1996).

2. Arguing that principles of *stare decisis* require continued adherence to *Clewis* is disingenuous as *Clewis* itself ignored these principles. See *Clewis*, 922 S.W.2d at 155–57 (McCormick, P.J., dissenting) (explaining how *Clewis* ignored 75 years of well-settled precedent).

3. See *Clewis*, 922 S.W.2d at 152–55 (McCormick, P.J., dissenting) (Legislature, pursuant to constitutional authority, very carefully insured that a civil "factual sufficiency" standard would not apply to criminal cases).

account for the prosecution's "beyond a reasonable doubt" burden of proof.[4] The *Clewis* dissenters were criticized for being disrespectful of the intermediate appellate courts. *Clewis*, 922 S.W.2d at 151 (Meyers, J., concurring).[5] It also was explained to the general public that *Clewis* would not result in the reversal of "well-founded" convictions because there was "no reason whatsoever to believe that our intermediate appellate courts will not perform evidentiary review in a cautious, responsible, and *deferential* way, just as the law requires." *Id.* (Emphasis Supplied).

Well, *Clewis* has resulted in the reversal of a growing number of "well-founded" convictions.[6] And, this is the second major case since this Court decided *Clewis* in which it has become necessary for this Court to try to articulate a proper application of the "factual sufficiency" standard adopted in *Clewis*. This current attempt fares no better than previous ones. And, the problem is not with the intermediate appellate courts. The problem is *Clewis*.

It is beyond dispute that one of the main differences between a civil "factual sufficiency" standard and a *Jackson v. Virginia*[7] sufficiency standard is the amount of deference the reviewing court affords to the jury on questions of credibility and weight of the evidence. *Jackson v. Virginia* requires the reviewing court to view the evidence "in the light most favorable to the verdict" meaning that the reviewing

court defers to the jury on questions of credibility and weight of the evidence. See *Clewis*, 922 S.W.2d at 133. The modified civil "factual sufficiency" standard which *Clewis* purportedly adopted requires the reviewing court to view the evidence "without the prism of in the light most favorable to the verdict" meaning that the reviewing court does not have to defer to, and may substitute its judgment for, the jury on these questions. See *Clewis*, 922 S.W.2d at 134.[8]

The problem begins with *Clewis'* internal contradictions on the question of appellate deference to the jury's credibility and weight determinations. *Clewis* said that under its "factual sufficiency" standard "an appellate court reviews the factfinder's weighing of the evidence and is authorized to disagree with the factfinder's determination." See *Clewis*, 922 S.W.2d at 133 and at 149 (Clinton, J., concurring) (reviewing court must consider and *weigh* the evidence). Yet, *Clewis* contradicts itself by also saying that the reviewing court is "not free to reweigh the evidence" and that its sufficiency standard must be "appropriately deferential so as to avoid an appellate court's substituting its judgment for that of the jury." See *Clewis*, 922 S.W.2d at 133, 135 and at 151 (Meyers, J., concurring) (standard should be applied in a "deferential way").[9] To defer or not to defer, that is the question.

4. So, from its very inception the *Clewis* standard was out-of-harmony with civil law which undermines its stated rationale to harmonize criminal and civil law. See *Clewis*, 922 S.W.2d at 129 (erroneously claiming that its holding "harmonizes the criminal and civil jurisprudence of this State with regard to appellate review of questions of factual sufficiency").

5. The criticisms of the *Clewis* dissenters, however, were directed at the *Clewis* decision itself and not at the intermediate appellate courts. See *Clewis*, 922 S.W.2d at 151–58 (McCormick, P.J., dissenting).

6. See Footnote 19.

7. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

8. See also *Clewis*, 922 S.W.2d at 152–53 (McCormick, P.J., dissenting).

9. Another case decided after *Clewis* repeated this contradiction. See *Jones v. State*, 944 S.W.2d 642, 647–48 (Tex.Cr.App.1996), cert. denied, 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997). In the same sentence *Jones* says that the jury is "the *sole* judge of the weight and credibility of witness testimony" but also says the reviewing court's evaluation "should not substantially intrude upon" this function that *Jones* says belongs *solely* to the jury. *Jones*, 944 S.W.2d at 648.

This Court unsuccessfully tried to resolve this question in *Cain v. State*, 958 S.W.2d 404 (Tex.Cr.App.1997). In *Cain*, the Court relied on Article 38.04, V.A.C.C.P., to decide that *Clewis'* "factual sufficiency" standard requires appellate deference to the jury's credibility and weight determinations. See *Cain*, 958 S.W.2d at 407 (reviewing "court must defer to jury findings, and may find the evidence factually insufficient only where necessary to prevent manifest injustice").[10] Article 38.04, which contrary to *Clewis Cain* recognized as applying to the "appellate process," clearly and unambiguously provides that the jury "is the *exclusive* judge of the facts proved, and of the weight to be given to the testimony." (Emphasis Supplied).

But, contrary to Article 38.04, *Cain* also carried forward *Clewis'* internal contradictions on appellate deference to the jury's credibility and weight determinations when *Cain* also stated that the reviewing court views the evidence without the "prism" of "in the light most favorable to the verdict" and "sets aside the verdict only if it is so contrary to the overwhelming *weight* of the evidence as to be clearly wrong and unjust." *Cain*, 958 S.W.2d at 407 (emphasis supplied).[11] As in *Clewis*,

*Cain* did not explain how a reviewing court can simultaneously defer to the jury's credibility and weight determinations but also set aside a verdict because it is against the "weight" of the evidence.

The Court's opinion in this case is also contrary to Article 38.04 and also carries forward *Clewis'* internal contradictions on the question of a reviewing court's deference to the jury's credibility and weight determinations. The Court's opinion does this when it says "the reviewing court must always remain cognizant of the fact finder's role and *unique* position, *a position that the reviewing court is unable to occupy*" but then it says the reviewing court may sometimes occupy this position, which it earlier says the reviewing court cannot occupy, when "necessary to arrest the occurrence of a manifest injustice." See *Johnson v. State*, 23 S.W.3d 1, 6–7, 9 (Tex.Cr.App., delivered this date) (emphasis supplied).[12]

Another one of *Clewis'* serious flaws is its determination that its modified civil "factual sufficiency" standard is necessary to prevent an "unjust" conviction.[13] This is based on *Clewis'* mischaracterization of

---

**10.** *Clewis* rejected this when it was raised in one of the dissenting opinions. Compare *Clewis*, 922 S.W.2d at 135 (Article 38.04 does not apply to the "appellate process"), *with*, *Clewis*, 922 S.W.2d at 154–55 (McCormick, P.J., dissenting) (Article 38.04 requires appellate deference to jury's credibility and weight determinations). So, *Cain* overruled that part of *Clewis* which decided that Article 38.04 does not apply to the appellate process.

**11.** A reviewing court cannot set aside a verdict because it is "against the great weight of the evidence" without substituting its judgment for the jury's on questions of credibility and weight of the evidence. In also deciding that a reviewing court must defer to the jury's credibility and weight determinations, *Clewis* and *Cain* are contrary to the essential nature of a "factual sufficiency" standard which *in all cases* permits the reviewing court to substitute its judgment for the jury's on credibility and weight determinations.

**12.** The Court's opinion repeats the contradictory statements from *Jones* that an appellate

court "must employ appropriate deference to prevent an appellate court from substituting its judgment for that of the fact finder, and any evaluation should not substantially intrude upon the fact finder's role as the *sole* judge of the weight and credibility given to witness testimony." (Emphasis Supplied). See Footnote 9.

**13.** I have yet to see any case where *Clewis* has prevented an "unjust" conviction. It is difficult to imagine how a "rational" finding of guilt beyond a reasonable doubt could also be considered "manifestly unjust." So far, there has been no case where 40 nuns have showed up at a convicted defendant's trial to proclaim his innocence which is the only "useful example" of an "unjust" conviction that *Clewis* provides. See *Clewis*, 922 S.W.2d at 133 fn. 12. Absent these kinds of facts, the intermediate appellate courts should hesitate to reverse convictions on "factual sufficiency" grounds.

the *Jackson v. Virginia* standard as a "no evidence" standard.[14] *Clewis* did this when it said that we apply the *Jackson v. Virginia* standard "in such a way that the only evidence a reviewing court considers is the evidence that supports the verdict."[15] In thus characterizing the *Jackson v. Virginia* standard, *Clewis* ignored *Jackson v. Virginia* and this Court's well-settled case law all of which decided some time ago that the *Jackson v. Virginia* standard is not a "no evidence" standard because it requires the reviewing court to consider *all* the evidence.[16]

This is an important point which *Clewis* glossed over with its 40 nun hypothetical to which *Clewis* claimed *Jackson v. Virginia* provided no remedy. See *Clewis*, 922 S.W.2d at 133 fn. 12. A properly applied *Jackson v. Virginia* standard, however, would provide a remedy in the 40 nun hypothetical because the evidence would be insufficient under this standard to support the conviction. See *Clewis*, 922 S.W.2d at 156 fn. 7 (McCormick, P.J., dissenting). This would not require the reviewing court to substitute its judgment for the jury's on credibility and weight determinations, it would merely require the reviewing court to decide that a finding of guilt on such a record is not "rational."

A properly applied *Jackson v. Virginia* standard does not result in an "unjust" conviction.

Another hypothetical that illustrates this is a robbery of a convenience store case. The store clerk at trial identifies A as the robber. A properly authenticated surveillance videotape of the event clearly shows that B committed the robbery. But, the jury convicts A. It was within the jury's prerogative to believe the convenience store clerk and disregard the video. But based on *all* the evidence the jury's finding of guilt is not a rational finding.[17]

A properly applied *Jackson v. Virginia* standard, therefore, is much more exacting than *Clewis* claims. *Jackson v. Virginia* requires the reviewing court to consider *all* the evidence in the "light most favorable to the verdict," and then it requires the reviewing court to decide whether the jury's finding of guilt is "rational." A properly applied *Jackson v. Virginia* standard is essentially as exacting a standard as a "factual sufficiency" standard which means that when the evidence meets the *Jackson v. Virginia* standard, it can never be "factually insufficient" and when the evidence is "factually insufficient," it will always be insufficient under the *Jackson v. Virginia* standard.[18]

**14.** This was necessary to support *Clewis'* "harmonization with civil law" rationale which the Court's opinion in this case also carries forward. Civil law has "no evidence" and "factually insufficient evidence" sufficiency standards. The "harmonization with civil law" rationale would be undermined if the *Jackson v. Virginia* standard was characterized as something other than a "no evidence" standard. Harmony would be lost.

Of course, there are many examples where the criminal side and the civil side are not in harmony. The two most glaring examples are burden of proof and right to appeal. Unlike the criminal side where the burden of proof is beyond a reasonable doubt, the burden of proof on the civil side is preponderance of the evidence. Unlike the civil side where *both* parties have the right to appeal an adverse jury verdict, the State has no right to appeal an adverse jury verdict in a criminal case.

**15.** Compare *Clewis,* 922 S.W.2d at 132 fn. 10, *with, Clewis,* 922 S.W.2d at 156 fn. 8 (McCormick, P.J., dissenting).

**16.** See *Clewis,* 922 S.W.2d at 156 fn. 8 (McCormick, P.J., dissenting) and authorities cited therein.

**17.** The reader might note that *Clewis* would permit a reprosecution of A and the defendant in the 40 nun hypothetical when they would be entitled to appellate acquittals under *Jackson v. Virginia* which further undermines *Clewis'* rationale that it is needed to prevent an "unjust" conviction.

**18.** See *Clewis,* 922 S.W.2d at 155–56 (McCormick, P.J., dissenting); see also *Clewis v. State,* 876 S.W.2d 428, 438–39 (Tex.App.— Dallas 1994), *rev'd, Clewis,* 922 S.W.2d at 134 (by requiring the reviewing court to consider *all* the evidence, the *Jackson v. Virginia* standard has a "built-in factual sufficiency com-

So, when the intermediate appellate courts determine that the evidence is sufficient under *Jackson v. Virginia* but "factually insufficient" under *Clewis* to support a conviction and remand a case for a new trial, they either will have misapplied *Clewis* (in which case the conviction should have been affirmed) [19] or they will have failed to appreciate that the evidence is also insufficient under *Jackson v. Virginia* (in which case the defendant should have received an appellate acquittal).[20] Under *Clewis*, therefore, only law abiding citizens or acquittal deserving defendants get a raw deal.[21] In practice, the former is usually the case.

The *Clewis* standard also presents a federal constitutional problem assuming the jury is the sole judge of the credibility and weight of the evidence as Article 38.04 clearly requires. The only real way to reconcile *Clewis* and *Cain* is to follow the "plain" language of Article 38.04 and decide that an appellate court must defer to the jury's credibility and weight determinations.[22] Deferring to the jury's credibility and weight determinations, the *Jackson v. Virginia* standard requires a reversal when the reviewing court determines that the jury's verdict is "irrational." Deferring to the jury's credibility and weight determinations, the *Clewis* standard requires a reversal when the reviewing court determines that the jury's verdict is "clearly wrong or unjust" or "manifestly unjust."

This is a tougher standard to meet than the *Jackson v. Virginia* standard. This presents a federal constitutional problem because *Jackson v. Virginia* insufficiency requires the remedy of an acquittal [23] while *Clewis* insufficiency requires the remedy of only a remand for a new trial. Assuming appellate deference to the jury's credibility and weight determinations as Article

ponent" although in "a more limited fashion" than a civil "factual sufficiency" standard).

**19.** See, e.g., *Goodman v. State*, 5 S.W.3d 891 (Tex.App.—Houston [14th Dist.] 1999, pet. filed)(most recent and clearest example of misapplication of *Clewis* "factual sufficiency" standard to reverse a "well-founded" conviction); see also *Cain*, 958 S.W.2d at 408–10 (another example of misapplication of *Clewis* "factual sufficiency" standard to reverse a "well-founded" conviction); *Reina v. State*, 940 S.W.2d 770 (Tex.App.—Austin 1997, pet. ref'd) (same); *Gaffney v. State*, 940 S.W.2d 682 (Tex.App.—Texarkana 1996, pet. ref'd) (same); *Perkins v. State*, 940 S.W.2d 365 (Tex. App.—Waco 1997), vacated and remanded, 993 S.W.2d 116 (Tex.Cr.App.1999) (same); *Fulton v. State*, No. 10–95–00169 (Tex.App.— Waco, delivered April 3, 1996) (nonpublished), petition for discretionary review dismissed as improvidently granted (Tex.Cr.App. No. 954–96) (same); *Bell v. State*, No. 10–97–062–Cr (Tex.App.—Waco, delivered February 18, 1998, pet. filed) (same).

**20.** The author has found two reported cases where the Courts of Appeals reversed a conviction on *Clewis* "factual insufficiency" grounds and remanded for a new trial when the appellants were actually entitled to appellate acquittals under a proper application of *Jackson v. Virginia*. See *Burns v. State*, 958 S.W.2d 483 (Tex.App.—Houston [14th Dist.] 1997, no pet.); *White v. State*, 890 S.W.2d 131 (Tex.App.—Texarkana 1994, pet. ref'd). In reversing and remanding for a new trial on *Clewis* "factual sufficiency" grounds, *White* actually relied on this Court's decision in *Foster v. State* which set out the requirements for applying *Jackson v. Virginia's* evidentiary review standard! *White*, 890 S.W.2d at 139 citing *Foster v. State*, 635 S.W.2d 710, 719 (Tex.Cr.App.1982) (op. on reh'g). So, even though it purported to apply the *Clewis* "factual sufficiency" standard, *White* effectively applied the *Jackson v. Virginia* standard to decide that the prosecution could reprosecute the appellant when he should have been acquitted on appeal.

**21.** Here, the Court of Appeals decided that appellant's guilt was not "established beyond a reasonable doubt" and remanded the case for a new trial. *Johnson v. State*, 978 S.W.2d 703, 707 (Tex.App.—Corpus Christi 1998). If this were true, then the Court of Appeals should have provided the remedy of an acquittal instead of providing the prosecution with another opportunity to convict appellant whose guilt was not "established beyond a reasonable doubt" in the first trial.

**22.** Or, the Court could do another flip-flop and decide that Article 38.04 does not apply to the appellate process.

**23.** See *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

38.04 clearly requires, a finding that is "manifestly wrong and unjust" under *Clewis* cannot also be considered "rational" under *Jackson v. Virginia*, and a finding that is "rational" under *Jackson v. Virginia* cannot also be considered "manifestly wrong and unjust" under *Clewis*.

The Court's opinion also erroneously states this Court has only addressed a "factual sufficiency" standard when a defendant "had the burden of proving [an] affirmative defense by a preponderance of the evidence" but not "when a [defendant] contests the factual sufficiency of an issue in which the State possessed the burden of proof." See *Johnson*, 23 S.W.3d at 10. This is erroneous as *Clewis* clearly addressed whether a "factual sufficiency" standard should be applied to matters the State has to prove. See *Clewis*, 922 S.W.2d at 132.

The Court also errs to adopt both prongs of the civil "factual sufficiency" standard to matters the State has to prove. See *Johnson*, 23 S.W.3d at 9–10. The Court does this for the sake of "harmonizing" our "civil and criminal" jurisprudence. See *Johnson*, 23 S.W.3d at 11. The civil side, however, does not permit a party to raise both prongs of the civil "factual sufficiency" standard to matters upon which the other party has the burden of proof. See *Johnson*, 23 S.W.3d at 9–10. The civil side permits the challenging party to raise only one "factual sufficiency" challenge. See *id.* The Court's opinion, therefore, does not "harmonize" our "civil and criminal jurisprudence."

To be consistent with the civil side, a defendant with the burden of proof on an issue such as an affirmative defense would raise a "factual insufficiency" point by claiming the jury's failure to find the affirmative defense is "against the great weight and preponderance of the evidence." See *id.* The *only* "factual sufficiency" challenge a defendant would raise to a jury's adverse finding on matters the prosecution has to prove would be to claim the jury's finding is "clearly wrong and manifestly unjust." See *id.*

Finally, it should be noted that the Court of Appeals misapplied the contradictory "factual sufficiency" standard set out in the Court's opinion today. Despite its statements to the contrary, the Court of Appeals could not have reversed this conviction without substituting its judgment for the jury's on credibility and weight determinations or, as the Court's opinion says today, without "substantially [intruding] upon the fact finder's role as the *sole* judge of the weight and credibility given to witness testimony." See *Johnson*, 23 S.W.3d at 7; *Johnson*, 978 S.W.2d at 707 (Rodriguez, J., dissenting). And, on this record, it cannot be said that "a different result is appropriate," or that this case presents "exceptional circumstances," or that the jury's verdict is "manifestly wrong and unjust." See *Johnson*, 23 S.W.3d at 7, 8.

In summary, rather than digging our jurisprudence deeper into the *Clewis* quagmire, the Court should overrule *Clewis*.[24] I would do this because *Clewis* is contrary to clear legislative intent, it is internally contradictory, it ignored 75 years of well-settled precedent, it has been overruled in part by *Cain*, it is now more out of "harmony" with the civil side than it was before, it seriously misapplies the *Jackson v. Virginia* standard, it does not accomplish its goal of preventing an "unjust" conviction, it has usually resulted in a reversal of ~~only~~ "well-founded" convictions,[25] and it carries the very real possibility as has

---

24. Compare *Tibbs v. Florida*, 397 So.2d 1120, 1125–26 (Fla.1981) (abandoning its short-lived experiment with "factual sufficiency" review standard for policy reasons and also because this standard was unworkable).

25. See Footnote 19.

happened in at least two reported cases[26] that a defendant could be reprosecuted for an offense for which he should have been acquitted under *Jackson v. Virginia.*

I respectfully dissent.