Opinion issued November 2, 2006
     











In The
Court of Appeals
For The
First District of Texas




NO. 01-05-01019-CR
 



MARTIN RAY PERALES, APPELLANTv.
THE STATE OF TEXAS, APPELLEE




On Appeal from the 337th District Court
Harris County, Texas
Trial Court Cause No. 1017094






MEMORANDUM OPINION

          A jury convicted appellant, Martin Ray Perales, of indecency with a child, and
the trial court assessed punishment at two years in prison. See Tex. Pen. Code Ann.
§ 21.11 (Vernon 2005). We determine whether the evidence was factually sufficient
to show that appellant was guilty of indecency with a child and whether the trial court
erred in refusing to grant funds to appellant for the purpose of hiring an expert
witness. We affirm.FactsBecause this case involves a challenge to the factual sufficiency of the
evidence, all relevant facts are set out herein.
          April Ybarra married appellant in 1996, and they had two children, L.P. and
B.P. April and appellant divorced in 2001. After the divorce, April retained custody
of the children, and appellant was allowed visitation on alternate weekends. April
married Adam Ybarra in 2002. April, Adam, L.P., B.P., and Robert Nieto, April’s
grandfather, all resided in an apartment in Pasadena, Texas. L.P. and B.P. referred
to Adam Ybarra as “Dad” or “Daddy” and to appellant as their “other father.” Adam
and April had spoken about Adam’s adopting the girls, but in order for him to adopt
them, appellant would have had to terminate his parental rights voluntarily, which he
was unwilling to do.
          In January of 2005, L.P., who was seven, and B.P., who was five, returned
home from a visit with appellant, and L.P. began shaking and crying. L.P. told her
mother nothing was wrong and eventually calmed down and went to bed. The next
evening, when April was at a nighttime college class, L.P. approached Adam and told
him that appellant had touched her on her chest and genitals. Adam called April, and
she left class and returned home. April then questioned L.P. and B.P. about the
incident with appellant. L.P. repeated to April what she had told Adam; B.P. did not
say anything. L.P. also said that appellant had told her not to tell, but appellant later
denied that allegation. Soon afterward, L.P. began to be afraid to go to the bathroom
alone, she started having nightmares and trouble sleeping, and she was anxious.
          The day after L.P. had told April and Adam that appellant had touched her,
April and Adam contacted the police. They were instructed to file a report with Child
Protective Services (“CPS”), which they did. Afterwards, a forensic interviewer
affiliated with CPS interviewed L.P. alone. Police officers then spoke with L.P.,
April, and Adam. On March 2, 2005, L.P., April, and Adam visited psychotherapist
Jennifer Pinotti-Sanders to have L.P. evaluated and treated for nightmares and
anxiety. L.P. slept through most of the 45-minute session because she was ill with
a cold. Thus, Pinotti-Sanders obtained most of her information about L.P.’s
allegation and symptoms from April and Adam. Based on that information, Pinotti-Sanders diagnosed L.P. with post-traumatic stress disorder. After the initial
evaluation, L.P. had one other appointment with Pinotti-Sanders. Additionally, L.P.
saw a psychiatrist, Dr. Daniel Koppersmith, who corroborated Pinotti-Sanders’s
diagnosis and prescribed medicine to help L.P. sleep. L.P. had two visits with
Koppersmith.
          Meanwhile, police contacted appellant and asked him to come to the police
station to discuss the allegation of sexual abuse. The precise reason for the meeting
was not discussed on the telephone. Appellant went to the police station voluntarily
and spoke with police in an effort to resolve the case. When he arrived, appellant
found out for the first time that L.P. had claimed that he had touched her
inappropriately. Police conducted two separate interviews with appellant. During the
first interview, Detective Tim Brinson interviewed appellant for about 45 minutes. 
During the second interview, Officer Jerry Wright and Detective Brinson both spoke
to appellant for approximately two and one half hours. At the beginning of the
meetings with police, appellant vehemently denied that he had touched L.P. After a
while, he admitted that he and L.P. had been playing on the bed, that she had begun
to fall, and that he had “used [his] hand to catch her and held her vagina.” After
continued questioning, appellant finally stated that he had touched L.P. and that he
knew that it was wrong. 
          L.P. was questioned about the sexual abuse by at least five different persons
on separate occasions, and certain details of her story were inconsistent. At different
times, L.P. said that she was at home, that she was at the house of a “Grandma Alice,”
that she and appellant had been playing, or that she had been reading a book. 
However, L.P. maintained every time that it was appellant who had touched her on
her chest and genitals. 
Factual Sufficiency
          We address appellant’s second point of error first. In his second point of error,
appellant claims that the evidence was factually insufficient to prove indecency with
a child, specifically, that the jury could not infer intent from the evidence offered. 
A.      The Standard of Review
          When conducting a factual-sufficiency review, we view all of the evidence in
a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex Crim. App. 1997). We will
set the verdict aside only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). Under the first prong of Johnson, we cannot conclude that a conviction is
“clearly wrong” or “manifestly unjust” simply because, on the quantum of evidence
admitted, we would have voted to acquit had we been on the jury. Watson v. State, 
No. PD-469-05, 2006 WL 2956272, at *10 (Tex. Crim. App. Oct. 18, 2006). Under
the second prong of Johnson, we cannot declare that a conflict in the evidence
justifies a new trial simply because we disagree with the jury’s resolution of that
conflict. Id. Before finding that evidence is factually insufficient to support a verdict
under the second prong of Johnson, we must be able to say, with some objective basis
in the record, that the great weight and preponderance of the evidence contradicts the
jury’s verdict. Id. In conducting a factual-sufficiency review, we must also discuss
the evidence that, according to the appellant, most undermines the jury’s verdict. 
Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
          We may not re-weigh the evidence and substitute our judgment for that of the
fact-finder. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The
fact-finder alone determines what weight to place on contradictory testimonial
evidence because that determination depends on the fact-finder’s evaluation of
credibility and demeanor. Cain, 958 S.W.2d at 408–09. As the determiner of the
credibility of the witnesses, the fact-finder may choose to believe all, some, or none
of the testimony presented. Id. at 407 n.5.
B.      The Law
          A person commits indecency with a child if that person has sexual contact with
a child younger than 17 who is not that person’s spouse. Tex. Pen. Code Ann. §
21.11(a)(1) (Vernon 2005). Sexual contact means any touching, including touching
through clothing, of the anus, breast, or any part of the genitals of the child, if the act
is committed with the intent to arouse or to gratify the sexual desire of any person. 
Id. § 21.11(c)(1) (Vernon 2005). Intent to arouse or to gratify the sexual desire of any
person can be inferred from the defendant’s conduct, his remarks, and all surrounding
circumstances. McKenzie v. State, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981). 
C.      Inference of Intent
          Appellant argues that there is no evidence of intent to arouse or to gratify
anyone’s sexual desire because one cannot infer intent from appellant’s statement to
police. However, such intent may be inferred from the defendant’s conduct, his
remarks, and all surrounding circumstances. See id.
          The jury could have inferred intent from appellant’s statements. When
appellant began talking to police, he denied ever having touched L.P. at all. 
Gradually, the denials grew weaker, and he offered an explanation: he and L.P. had
been playing, she started to fall, and he had caught her and held her vagina. After
continued questioning, he stated that he had touched her and knew it was wrong. 
Appellant was concerned that he could “go to jail for it”; he agreed that thinking
sexual thoughts about his daughter and having sexual contact with her was wrong. 
He admitted that he had started to get an erection as he held her vagina, but realized
that it was wrong and stopped. When detectives asked appellant what he would say
to L.P. if she were there, appellant expressed a desire to tell L.P. that he was sorry,
that he loved her, and that the inappropriate touching would never happen again.
          The jury could also have inferred intent from the surrounding circumstances. 
L.P. testified that she told appellant to stop touching her, although appellant told the
police that L.P. had not said anything. L.P. also testified that appellant had told her
not to tell, although he denied it.
          Appellant attempts to distinguish this case from others in which intent could
be more easily inferred from unusual or lascivious behavior, such as when a stranger,
instead of a parent or caregiver, touches a child’s genitals. However, the jury was the
judge of the weight of the evidence and of the credibility of the witnesses. See Cain,
958 S.W.2d at 407. A rational jury could have found beyond a reasonable doubt that
appellant touched L.P. with the intent to arouse or to gratify his sexual desire, based
on appellant’s conduct, remarks, and the surrounding circumstances. Simply because
cases exist in which more extreme conduct occurred—that is, in which intent to
arouse or to gratify sexual desire could be more easily inferred—does not mean that
a jury could not have inferred intent from the facts of this case.
          We overrule appellant’s second point of error.
Denial of Request for Expert Witness
          In his first point of error, appellant contends that he was harmed by the trial
court’s denial of funds for an expert witness. 
          Prior to trial, defense counsel submitted a request for expert-witness funds. 
The request alleged that appellant was indigent because he had expended his
resources for employment of trial counsel. However, the request did not allege, and
appellant did not prove, that he had incurred any investigative expenses. The Court
of Criminal Appeals has held that when a defendant neither alleges nor shows that he
has incurred any investigative expenses, it is not error for the trial court to refuse a
request for expert-witness funds. Green v. State, 682 S.W.2d 271, 291 (Tex. Crim.
App. 1984). Therefore, the trial court’s denial of funds for an expert witness was not
error. 
          We overrule appellant’s first point of error.
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                             Tim Taft
                                                             Justice

Panel consists of Justices Taft, Keyes, and Hanks.

Do not publish. See Tex. R. App. P. 47.2(b).