TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-02-00395-CR






Travis Williams, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NO. 3012647, HONORABLE BOB PERKINS, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



A jury found appellant Travis Williams guilty of burglary of a habitation. Tex. Pen.
Code Ann. § 30.02 (West 2003). The district court assessed punishment, enhanced by previous
felony convictions, at imprisonment for fifty-two years. In three points of error, appellant contends
the evidence is factually insufficient to sustain the guilty verdict, the court erred by failing to read
back a portion of the testimony requested by the jury, and his trial counsel was ineffective. We will
overrule these contentions and affirm the conviction.

The complaining witness lived in a four-bedroom duplex with three roommates. On
October 3, 2000, she went to a party after work and did not arrive home until after 2:30 a.m. She
immediately went to bed and fell into a deep sleep. After she had been asleep for a "couple of
hours," someone began to "poke" and "shake" her and tell her to wake up. Still half asleep, and not
thinking about who this person could be, the complainant said, "Leave me alone." The person
persisted, and the complainant "kind of realized that somebody was trying to, you know, touch me." 
The complainant felt someone touch her breasts, then begin to pull off her boxer shorts. The
complainant's bedroom was extremely dark, and she could not see who was in the bed with her. Still
not fully awake, she assumed that it was a friend she was expecting at about 7:30 a.m. She asked,
"Why are you here so early," and the person replied that he "got off work early." He also told her
it was 4:45, and she told him to go to sleep.

The complainant testified, "It just continued with the same thing, you know. He'd
stop, I fall back to sleep, and then he'd start again. And I tell him to stop, and he start again. Well,
I fell back to sleep and he had stopped for a while I guess because I fell back to sleep pretty well. 
And the next thing I knew I woke up and my boxers were off and he was touching my, you know,
my vagina, basically." Still thinking that the person touching her was her friend, she became irate,
got out of bed, put on her shorts, and went to the kitchen for a glass of water. She still had not seen
the person clearly.

As the complainant stood in the kitchen, a voice asked, "Do you mind if I sit on your
couch naked?" She went on, "And that blew me away. So I just like stormed into the living room. 
It was like, you know, I was going to yell at him and it was this guy that I didn't even know." 
Instead of her friend, a man the complainant identified at trial as appellant was sitting on the couch,
naked. She ordered him out of the house. He stood, holding a shirt over his genitals, and walked
to the front door. Before leaving the duplex, he turned, gave the complainant a "really creepy smile,"
and said, "I'd been waiting all my life for this."

The complainant reported this incident to the police and a composite sketch of the
suspect was prepared. Several months later, after appellant was arrested for an unrelated offense in
the same neighborhood, a police officer noticed that he resembled the composite sketch. A
photographic lineup was prepared and the complainant selected appellant's picture. Appellant's
DNA matched DNA samples taken from a perspiration stain found on the complainant's bed on the
morning of the offense.

The complainant testified that appellant had knocked on the door of her duplex about
one week before this incident. On that occasion, he asked if he could spend the night and was told
that he could not. The complainant said that she did not consent to appellant entering her residence
or to his touching her as he did.

A factual sufficiency review asks whether a neutral review of all the evidence, both
for and against the finding of guilt, demonstrates that the proof of guilt is either so obviously weak
or so greatly outweighed by contrary proof as to undermine confidence in the jury's determination
and render the guilty verdict manifestly unjust. See Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000). In this cause, the defense did not offer any evidence. Appellant's factual sufficiency
challenge is based on what he considers to be several weaknesses in the State's case.



 Appellant says the complainant "did not directly answer" when asked if the
assailant penetrated her vagina. In fact, when asked by the prosecutor if appellant
penetrated her with his finger, she answered, "When, that's when I woke up." 
When defense counsel asked her if the assailant had penetrated her with his penis,
she replied, "Not that I can remember. I was sleeping." We do not find these
answers to be evasive, given the circumstances.




 Appellant asserts that the "only possible explanation" for the police not finding his
fingerprints in the complainant's residence is that "someone let [him] in the house." 
The State suggests another equally plausible explanation: any prints appellant
might have left were obscured by the large number of people who lived and visited
the complainant's residence. 




 Appellant argues that the perspiration stain on the complainant's bed, still visible
to the police an hour after the alleged assault, is evidence of "[p]rolonged, vigorous
sex" indicative of consent. In fact, the stain merely confirms the complainant's
testimony that appellant was in bed with her for some period of time. It does not
compel the conclusion that appellant's presence was consensual. We further note
that the complainant testified that she is a lesbian.




 Appellant asserts that the complainant's claim that he was naked when he left the
duplex is not credible. He notes that no clothes were found in or near the duplex,
and that there were no reports of a naked man roaming the neighborhood. Given
the early morning hour, it is not surprising that appellant was not noticed. He may
have left his clothes outside before entering the duplex and recovered them after
the assault.




The jury concluded that appellant intentionally or knowingly entered the
complainant's habitation without her consent and therein committed or attempted to commit sexual
assault. Tex. Pen. Code Ann. § 30.02(a)(3). Having reviewed all the evidence in a neutral fashion,
we conclude that the evidence of guilt is neither so obviously weak nor so greatly outweighed by
contrary proof as to render this verdict unjust. Point of error one is overruled.

Appellant's second point of error complains of the district court's failure to have a
portion of the testimony read to the jury. At 11:30 a.m., after the jurors had been deliberating
appellant's guilt for about one hour, they sent a note to the court reading, "[Complainant's] verbal
response to physical advances in bed." Although the court's response to this note is not in the
record, the parties agree that the jurors were told that the reporter's notes could be read only if they
were in disagreement with regard to specific testimony. See Moore v. State, 874 S.W.2d 671, 674
(Tex. Crim. App. 1994) (applying Tex. Code Crim. Proc. Ann. art. 36.28 (West 1981)). At 2:55
p.m., the jurors sent a note to the court saying that they were deadlocked. In response, the court had
the jury returned to the courtroom and gave a supplemental charge. At the same time, the court
reminded the jurors of their earlier note and said, "I have not gotten anything more back from you
on that subject. So I'm assuming that's not a problem. But if there is a read-back that you all need,
you all need to specify that matter that you're in disagreement on and send that back to me." The
jurors resumed their deliberations at 3:20 p.m. The record contains a third note, with no indication
of the time it was written, saying, "We have a disagreement regarding the sequence of statements
made to and by the victim while they were in bed. We would like to have that portion of the victim's
testimony read to us." There is no record of any response to the note, nor any indication that any
portion of the reporter's record was read to the jury. The jury's verdict was received at 6:12 p.m.

The parties agree that the last jury note was written sometime after 3:20 p.m. It is
impossible to determine, however, how much time passed between the third note and the verdict. 
Appellant assumes that the court simply ignored the note and failed to have the requested portion
of the reporter's notes read to the jury. But it is equally possible that the verdict followed the note
so quickly that the court had no time to respond. Given the state of the record, it cannot be said that
the district court refused to honor the jurors' request to rehear the complainant's testimony. Point
of error two is overruled.

Appellant's third and final point of error asserts ineffective assistance of counsel. 
Appellant claims that his attorney did not spend sufficient time with him before trial, sending instead
an associate, and therefore was not prepared for trial. He particularly complains that his lawyer did
not adequately cross-examine the complainant by asking a series of questions prepared by appellant. (1) 
Appellant also complains that his attorney did not ask the State's experts at trial whether the
perspiration stain on the bed was evidence of "prolonged vigorous sex." He asserts that "regardless
of the answers," such questioning "could have resulted in a different verdict." Finally, appellant
urges that his trial counsel was ineffective because he did not request that the court respond to the
jury's third jury note asking that certain testimony be reread.

In reviewing a claim of ineffective assistance, we must indulge a strong presumption
that counsel's conduct fell within the wide range of reasonable professional assistance. Jackson v.
State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To overcome this presumption, any allegation
of ineffectiveness must be firmly founded in the record and the record must affirmatively
demonstrate the alleged ineffectiveness. Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). 
We find no support in the record for appellant's assertion that counsel was not adequately prepared
for trial. We decline appellant's invitation to second-guess counsel's trial strategy with respect to
the cross-examination of the complainant and the State's experts. And we have already explained
that the record does not reveal whether the court or counsel had time to react to the jury's final note
before the verdict was received. Because the record does not affirmatively demonstrate
ineffectiveness of counsel, we overrule point of error three.

The judgment of conviction is affirmed.



 

 Mack Kidd, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed: June 19, 2003

Do Not Publish
1. Counsel did ask the complainant a series of questions that we suspect were prepared by
appellant: whether she had met appellant two weeks earlier and suggested to him that they "make
a child," whether she smoked marihuana on the night of the alleged attack, whether she sold
appellant marihuana that night, and whether she asked appellant to perform oral sex. She answered
each of these questions negatively.