NO. 07-07-0005-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JUNE 22, 2007
_____

NESTOR FIERRO,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2005-409,598; HON. BRADLEY UNDERWOOD, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Nestor Fierro (appellant) appeals his convictions for two counts of aggravated sexual assault and one count of sexual assault. Via two issues, he contends that the evidence was insufficient to support convictions upon counts I and II. We affirm.

### *Background*

On June 23, 2005, Lubbock police officer Joseph Rosendo received a domestic disturbance call and met with S.R. (the 14-year-old victim), her mother Sheryl, and appellant. According to Sheryl, she observed appellant kissing S.R. When appellant saw

Sheryl looking at them, he pushed S.R. away and began telling Sheryl that it "wasn't what [she thought] it [was]." Sheryl went into her daughter's bedroom to talk to her and later confronted appellant who denied kissing the teenager. Thereafter, the police were called, which resulted in appellant's arrest. Sometime later, appellant contacted Sheryl and stated that S.R. "just kept on, [he] couldn't - - [he] couldn't help it, [he] couldn't do anything to stop it."

According to S.R., appellant began propositioning her after they moved into the house of S.R.'s grandparents. The two began having sex after April 9, 2004, and while she was 13 years old. It initially involved appellant placing his finger in her vagina, and the instances occurred approximately twice a week. So too did appellant perform oral sex on the youth. And, on June 22, 2005, the two engaged in sexual intercourse. It was the following day that Sheryl found them kissing in a "grown-up" manner.

### *Issue One - No Evidence as to Date Offense Occurred in Count I*

Through his first issue, appellant contends that no evidence of record illustrates the date on which he committed the offense. The particular offense involved the insertion of his finger into S.R.'s sex organ. We disagree and overrule the issue.

To secure a valid conviction, the State need only allege in the charging instrument that the offense occurred "on or about" a certain date and prove that the offense happened at a time before the indictment was issued but within the limitations period. *Mireles v. State*, 901 S.W.2d 458, 459 (Tex. Crim. App. 1995) (en banc). And, here, that period was ten years from the date the youth turned 18. TEX. CODE CRIM. PROC. ANN. art. 12.01(5)(B) (Vernon 2005).

2

Next, appellant recognized that the record contains evidence demonstrating that the offense occurred in "April or May of 2004." That time lay within the statutory period of limitations and fell before the date on which the indictment was issued. This being some evidence upon which a rational jury could reasonably rely to determine the date on which the offense occurred, the conviction enjoys the support of legally sufficient evidence.

### *Issue Two - Evidence Factually Insufficient to Support Count II*

In his second issue, appellant contends that the evidence was factually insufficient to support conviction for aggravated sexual assault in Count II. This is allegedly so because the victim supposedly equivocated when testifying that appellant performed oral sex on her. We overrule the issue.

The testimony in question consisted of the following:

Q. [by the State] And about him putting his finger in you. Was there ever an occasion where the defendant performed oral sex on you?

A. One time, I think. Once or twice, I think.

Q. Okay. And where would that occur?

A. Well, one time we were going to go to Schlitterbahn. He wasn't going, but me and my cousins were going and my grandpa, too. And then they were like loading up outside, so I went to go take a shower. And then I was like - - I got out of the shower, and I was already dressed and everything. And then when I actually came out of the bathroom, then he was just like let me just do that or - - you know, I guess he asked me to do that. And then I was like no, I'm already going to leave. And then he was just like no, it's okay. And then he just like - - then it just happened. I don't know.

Q. And what happened?

A. He like - - I guess he just like - - he - - he just - - he just like - - I don't know. He just - - I guess he just like - - I guess he just licked me down there or whatever. I don't know.

3

Q. He licked you?

A. Yeah.

Q. On what part of your body?

A. On - - on my vagina.

Q. On your vagina?

A. Yes, ma'am.

\* \* \*

Q. And did his mouth, if he licked you, come in contact with your vagina?

A. Yes, ma'am.

As can be seen, while the witness initially stammered, she ultimately stated "yeah" when asked if appellant "licked" her. So too did she state "yes" when asked whether it was on her vagina. Neither response was equivocal. So, because the jury had the sole right to assess the witness' credibility and assign weight to her testimony, *Johnson v. State,* 23 S.W.3d 1, 6 (Tex. Crim. App. 2000), we cannot say that whatever stammering that occurred vitiated the value of her subsequent responses. In short, neither is the verdict overwhelmed by contrary evidence nor the evidence supporting the verdict weak. Consequently, the verdict is not bereft of factually sufficient evidentiary support.

The judgment of the trial court is affirmed.

Per Curiam

Do not publish.

4