MEMORANDUM OPINION




No. 04-02-00917-CR



Clifford Lee LEWIS,


Appellant



v.



The STATE of Texas,


Appellee



From the 144th Judicial District Court, Bexar County, Texas


Trial Court No. 2002-CR-3773


Honorable Mark R. Luitjen, Judge Presiding



Opinion by: Alma L. López, Chief Justice


Sitting: Alma L. López, Chief Justice

 Sandee Bryan Marion, Justice

 Phylis J. Speedlin, Justice


Delivered and Filed: October 8, 2003


AFFIRMED

 Clifford Lee Lewis ("Lewis") challenges the factual sufficiency of the evidence to support his
conviction by a jury of aggravated assault. We affirm the trial court's judgment.

 "For a factual sufficiency review, an appellate court looks at all the evidence to determine whether
it is so weak as to make the verdict clearly wrong and manifestly unjust or whether the adverse finding is
against the great weight and preponderance of the available evidence." Sims v. State, 99 S.W.3d 600,
601 (Tex. Crim. App. 2003). "Unless the available record clearly reveals a different result is appropriate,
an appellate court must defer to the jury's determination concerning what weight to give contradictory
testimonial evidence because resolution often turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered." Johnson v. State, 23 S.W.3d 1, 8 (Tex.
Crim. App. 2000).

 Carolyn Shakir was an eyewitness to the incident. She testified that she was slowing for a red light
at an intersection when a female ran in front of her car. Shakir noticed that the female was running in the
direction of the bus which was stopped at the corner. Shakir then noticed a person running behind her car,
and she assumed that person also was trying to catch the bus. Shakir glanced over to see if the two
individuals made the bus as the bus started through the light. Shakir saw the male hitting the female, and
the female calling for help. Shakir parked her car intending to help the female. The female was still trying
to get away from the male, and the two had crossed the street to where Shakir had parked. Shakir called
out for the male's attention and told him, "Don't do that here." The male responded, "It's all right, ma'am.
It's just my girlfriend." The female was still asking for Shakir's help. The female broke free, and the male
followed her. The male caught up with the female and pushed her. Eventually, the female dropped to the
ground. The male was unable to lift her. The male reached into the female's pocket, pulled out some
money, and put the money in his pocket. Shakir then saw the male turn, look at Shakir, and "sort of in one
motion he reached down, he came up and then he sliced her through like - like that." Shakir stated that
the male was holding a knife in his hand. Shakir approached the female, who told her that the male had
stabbed her. Shakir told the female to hold pressure on the cut. The female asked Shakir to take her to
the hospital. Shakir helped her up, and they returned to her car. The female then asked Shakir to take her
home instead of to the hospital. Shakir took the female to her mother's apartment. The mother called
EMS and the police. Shakir later learned that the female's name was Lydia Thomas. Shakir was unable
to identify the male. On cross-examination, Shakir stated that it was not possible that Thomas's hand was
with the male's hand when she was cut in response to questioning by defense counsel attempting to elicit
testimony to support Lewis's defensive theory that Thomas cut herself.

 Lucille Rex, the custodian of medical records for Brooke Army Medical Center, provided a copy
of Thomas's medical record from the incident in question.

 Thomas, who was 20 years old at the time of trial, testified that Lewis was her common-law
husband. Thomas had been admitted to the hospital a few days before trial and was on medication for
anxiety attacks, fear of killing herself, and depression. Thomas testified that she was running from Lewis
because he said he was going to kill her. She further testified that she fell down, bumped her head and
passed out. A "nice lady" helped her up and gave her a paper towel to hold to her neck. Thomas testified
that she did not even know she had been stabbed. Thomas was aware that Lewis carried a knife. Thomas
went to the hospital for treatment of the stab wound. Thomas recalled telling a police officer that she had
tried to run from Lewis, but he caught her and stabbed her in the neck. Thomas recalled Lewis telling her
that if she did not stop yelling, he was going to kill her. Thomas needed thirteen stitches to close the wound.
On cross-examination, Thomas admitted that she and Lewis were having problems regarding custody of
their child. Thomas also admitted that her mother disliked Lewis. Thomas stated that she still loved Lewis.
Thomas admitted making an earlier statement in writing at the request of Lewis in which she stated that she
stabbed herself in her neck. 

 Mark Hosek was the officer dispatched to Thomas's mother's apartment. Hosek found Thomas
with a stab wound to the left side of her neck. Thomas told Hosek that Lewis had stabbed her. Hosek
testified that Thomas never told him that she passed out, and Thomas confirmed the information he obtained
from Shakir. Hosek stated that Thomas was taken to BAMC by EMS.

 Robert Martinez was an officer with the family violence unit. Thomas told Martinez that Lewis
chased her. At some point, Thomas and Lewis fell to the ground, and Lewis stabbed her with a knife.
Martinez said Thomas never informed him that she had passed out.

 Dr. Randall Frost described Thomas's wound based on her medical records. Dr. Frost stated that
Thomas was fortunate not to have sustained a major injury from the wound. 

 Lewis, who was 41 years old at the time of trial, testified that on the date in question, he was
walking down the street with a prostitute that he had paid to accompany him to his house. Lewis testified
that Thomas called him and asked him for money for their child. Lewis refused to give her money because
the prostitute said that if Thomas wanted money, she needed to file for child support. Lewis turned to leave
with the prostitute, and Thomas confronted him about leaving with her. When Lewis turned back around,
he saw that Thomas had sliced herself. Lewis went back and took the knife from Thomas. Thomas ran
toward traffic, and Lewis followed her to make sure she did not further injure herself. Lewis did not
remember seeing Shakir at the scene. Lewis denied asking Thomas to sign a statement that she cut herself.
On cross-examination, Lewis admitted that he had previously been convicted of burglary of a habitation
and sentenced to probation, but his probation was revoked for not reporting and not paying his fees. Lewis
also admitted that he had previously been convicted of possession of a controlled substance, evading arrest,
and aggravated assault with serious bodily injury. Finally, Lewis admitted that he had been convicted of
theft.

 Lewis contends that the evidence is factually insufficient because Shakir was unable to identify him
and Thomas stated that she passed out. Thomas's testimony at trial that she passed out conflicted with her
earlier statements to Hosek and Martinez. Viewing all of the record evidence, including Shakir's testimony
and the statements made by Thomas to Hosek and Martinez, we conclude that the evidence is factually
sufficient to support a finding that Lewis stabbed Thomas in the neck. The judgment of the trial court is
affirmed.


 Alma L. López, Chief Justice


DO NOT PUBLISH