6-96-028-CV Long Trusts v. Dowd 


















In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00099-CV
______________________________



IN RE:

SAMUEL DREW TEMPLE, M.D.



Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Original Mandamus Proceeding





Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss



O P I N I O N

Â Â Â Â Â Â Â Â Â Â Â Â Samuel Drew Temple, M.D., has filed a petition for writ of mandamus in which he asks us
to order the trial court to vacate its February 20, 2004, ruling denying his motion to dismiss the
lawsuit and granting plaintiff an extension of time to file an amended expert report. The issue is the
adequacy of the medical expert's report pursuant to former Article 4590i. See Tex. Rev. Civ. Stat.
Ann. art. 4590i, Act of May 5, 1995, 74th Leg., R.S., ch. 140, Â§ 1, 1995 Tex. Gen. Laws 985,
repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, Â§ 10.09, 2003 Tex. Gen. Laws 884 and
recodified at Tex. Civ. Prac. & Rem. Code Ann. Â§ 74.351 (Vernon Supp. 2004â2005). Temple
asks this Court to issue a writ of mandamus ordering the trial court to dismiss the plaintiff's claims
against relator with prejudice.
Â Â Â Â Â Â Â Â Â Â Â Â Temple and two other doctors were sued by Albion Guppy, based on his allegations that their
failures in treatment resulted in serious injury. One of the other doctors, Robert O. Zimmerman,
M.D., also filed a petition for writ of mandamus with this Court concerning this same issueâthe
adequacy of the expert report and the trial court's granting of additional time to correct any
shortcomings. 
Â Â Â Â Â Â Â Â Â Â Â Â The only procedural distinction between the cases is that Zimmerman's motion was initially
granted, and then later was reconsidered by the trial court, while Temple, who filed his motion to
dismiss at a later date, had his motion heard for the first time at a combined hearing on the expert
report as to all of the doctors involved.
Â Â Â Â Â Â Â Â Â Â Â Â The issues raised in the Zimmerman mandamus and in this mandamus are not distinguishable. 
We have today addressed the issues raised in In re Robert O. Zimmernan, M.D., No. 06-04-00095-CV. Our opinion in that case disposes of the contentions raised by relator in this opinion. For the
reasons stated therein, we likewise deny this petition.
Â 
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â October 14, 2004
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â October 15, 2004



 213 S.W.3d 515, 521 (Tex. App.--Texarkana 2007, no pet.). Landis cannot now properly rely
on his appellate objection to the chain of custody as a basis for contending the trial court erred by
admitting the analysis of the consensual blood draw.

 We overrule Landis's challenge to the trial court's decision to admit the laboratory results of
his blood test. (1)

II. Admission of Laboratory Analysis of Drug Paraphernalia

 In another appellate issue, Landis contends the trial court "erred in admitting the lab analysis
of the marijuana and paraphernalia because a proper chain of custody was not provided prior to
testimony regarding its analysis." Landis's appellate complaint concerns State's Exhibits 16A
through 20.

 At trial, Landis raised his chain of custody challenge with respect to the admission of these
exhibits. Thus, this issue was preserved for appellate review. However, as noted above, the
propriety of an exhibit's chain of custody goes to that exhibit's weight rather than its admissibility. 
DeLeon, 505 S.W.2d at 289; Ingram, 213 S.W.3d at 521. The trial court committed no error by
admitting these exhibits over Landis's chain-of-custody challenge.

III. Evidentiary Sufficiency

 Finally, Landis contends the evidence is both legally and factually insufficient to support his
conviction. Landis contends that "[e]ven if the State's evidence of the blood intoxication level is
accepted, there is still no connection made between that and the accident." 

 In a legal sufficiency review, we examine the evidence from the court below, as measured
by the hypothetically correct jury charge, in the light most favorable to the trial court's judgment. 
Grotti v. State, No. PD-134-07, 2008 Tex. Crim. App. LEXIS 761, at *15 (Tex. Crim. App. JuneÂ 25,
2008) (not designated for publication); Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). 
The hypothetically correct jury charge sets forth the applicable law, is authorized by the charging
instrument, does not necessarily increase the State's burden of proof or restrict the prosecution's
theories of criminal liability, and adequately describes the particular offense for which the accused
is being tried. Grotti, 2008 Tex. Crim. App. LEXIS 761, at *23; Malik, 953 S.W.2d at 240.

 A factual sufficiency review requires us to assess all the evidence adduced at trial in a neutral
light. Grotti, 2008 Tex. Crim. App. LEXIS 761, at *15 (citing Roberts v. State, 220 S.W.3d 521,
524 (Tex. Crim. App. 2007); and referencing Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App.
2000)). We must then determine whether the jury was rationally justified in finding the accused
guilty beyond a reasonable doubt. Id. (citing Watson v. State, 204 S.W.3d 404, 415 (Tex. Crim. App.
2006)). "Evidence can be factually insufficient in one of two ways: (1) when the evidence
supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust; and
(2)Â when the supporting evidence is outweighed by the great weight and preponderance of the
contrary evidence so as to render the verdict clearly wrong and manifestly unjust." Id. (citing
Roberts, 220 S.W.3d at 524; Watson, 204 S.W.3d at 414-15; Johnson, 23 S.W.3d at 11; and
referencing Castillo v. State, 221 S.W.3d 689, 693 (Tex. Crim. App. 2007)). To hold that the
evidence is factually insufficient, we must be able to state objectively that the verdict is against the
great weight and preponderance of the evidence. Id.; Roberts, 220 S.W.3d at 524; Watson, 204
S.W.3d at 417. Like a legal sufficiency review, a factual sufficiency review requires that the
evidence be measured under the framework of the hypothetically correct jury charge. Id. at *15;
Wooley v. State, No. PD-0861-07, 2008 Tex. Crim. App. LEXIS 762 (Tex. Crim. App. June 25,
2008).

 Intoxication manslaughter is a result-oriented offense. Tex. Penal Code Ann. §Â 49.08; cf.
Perez v. State, 216 S.W.3d 855, 857 (Tex. App.--Corpus Christi 2006, pet. ref'd) (manslaughter is
result-oriented offense). The statutory elements the State must prove are (1) the defendant; (2) on
or about the date alleged in the indictment; (3) operated; (4) a motor vehicle, aircraft, watercraft, or
amusement ride; (5) while intoxicated; and (6) by reason of that intoxication; (7) by accident or
mistake; (8) caused the death of an individual. Tex. Penal Code Ann. Â§ 49.08; see also Daniel v.
State, 577 S.W.2d 231, 233 (Tex. Crim. App. [Panel Op.] 1979); Martinez v. State, 883 S.W.2d 771,
773 (Tex. App.--Fort Worth 1994, pet. ref'd). The indictment alleged Landis did

 then and there operate a motor vehicle in a public place while the said defendant was
intoxicated by not having the normal use of mental or physical faculties by reason of
the introduction of a combination of marijuana, and controlled substances into the
body, and did by reason for such intoxication cause the death of another, namely
Lindell Bradford Brown, by accident or mistake, to wit: by driving said motor
vehicle into the person of said injured party.


Therefore, the applicable hypothetically correct jury charge would, in this case, require proof that
(1) Landis; (2) on or about December 8, 2006; (3) operated; (4) a motor vehicle; (5)Â while
intoxicated; and (6) by reason of that intoxication; (7) by accident or mistake; (8)Â caused the death
of Brown. With these thoughts in mind, we turn to a review of the evidence presented to the jury.

 Jared Ball, Krystal Clark, and Brittany Hill each testified that on the afternoon of
DecemberÂ 8, 2006, Landis arrived at the house occupied by Ball and Clark and appeared to be
intoxicated. Ball described Landis's speech that day as being slurred. Landis also seemed unsteady
on his feet, a fact to which Clark also testified. When asked by the prosecutor whether he thought
it was safe for Landis to drive on that day, Ball responded, "I can't say so." Hill offered similar
testimony, telling the jury, "I told Krystal that she needed to say something to him [Landis] because
he was -- he shouldn't have -- he could barely walk, much less drive." On cross-examination, none
of the witnesses remembered seeing Landis consume any drugs or alcohol in their presence.

 Tammie Hayes was driving her vehicle on the evening of December 8, 2006, on Highway
898 in Fannin County. While driving on Highway 898, she was passed by a white pickup truck
being driven in an erratic manner. The truck was weaving in and out of its lane and driving into the
oncoming lane of traffic. Hayes then decided to follow the white pickup truck. Eventually, both
Hayes and the driver of the white pickup truck stopped at the same location. The driver of the truck
exited, and Hayes described the driver as "a boy . . . he was just kind of, well, wobbling, just
wobbling around is what you would say." The driver eventually approached Hayes's vehicle, which
prompted her to call 9-1-1. On cross-examination, Hayes admitted she did not see the driver of the
white pickup truck consume alcohol or drugs in her presence. On redirect, Hayes identified the
driver of the white pickup truck as being the Appellant. 

 Grover Russell came in contact with Landis shortly before the accident at issue in this case. 
According to Russell's testimony, Landis appeared intoxicated at the time. Russell admitted on
cross-examination that he never saw Landis consume any alcohol or narcotics on the date in
question. 

 Wade Lowery witnessed the accident that resulted in Brown's death. He offered the
following description of events:

 I was coming along 78 going north towards my house. A truck come off of 121, got
right in front of me. We topped that hill, started coming down and it just started just
veering off left into the oncoming traffic and it hit a truck that was going south, and
the truck that it hit spun around behind me and went off in a ditch behind me and hit
a tree. And the one that veered off, it spun around, the tires broke off of it, went in
the ditch, and it eventually stopped right directly in front of my road.


 Carolyn Malone also witnessed the accident at issue in this case. Immediately following the
crash, Malone went to aid Landis. Malone then heard Landis admit that he had been drinking earlier. 
Landis also admitted that he had smoked marihuana. 

 Paramedic Wade Jackson responded to the scene of the accident. He testified that he
believed that Landis had admitted to using illegal drugs before the accident. 

 Troopers Cory Hale and Eric Estes of the DPS--Highway Patrol responded to the accident
in question. During his investigation, Hale found marihuana laying right outside the driver's door
on the roadway next to Landis's truck; Hale also found a marihuana pipe inside Landis's truck. Hale
also told the jury that he contacted a fellow DPS trooper to meet Landis at an area hospital with a
blood draw kit because, based on what other witnesses told Hale and the drug use evidence he found
in Landis's vehicle, Hale suspected the accident was a result of Landis's drug use. On cross-examination, Hale admitted he found no evidence in Landis's truck to suggest Landis had been
smoking marihuana at the time of the accident. Estes testified that Landis "had slurred speech" and
had admitted to smoking marihuana prior to the accident. 

 Trooper Dexter Barkley, also of the DPS--Highway Patrol Division, met Landis at Dallas
Methodist Hospital. Barkley testified that he told Landis at the hospital that he and other police
officers had reason to believe that drugs or alcohol were a contributing factor in causing the wreck
in which Landis was involved. Barkley then requested a blood sample from Landis, which Landis
provided following Barkley's reading of the required statutory warning and consent form. 

 Lisa Skinner works for Methodist Health Systems in Dallas and analyzed the blood taken
from Landis by the hospital on December 8, 2006. Landis's blood test results were positive for
benzodiazepines, cocaine, amphetamines, and marihuana. Testing of Landis's blood by the DPS
crime laboratory showed similar results: Landis's blood was positive for high amounts of
methamphetamine, amphetamine, Alprazolam, and cocaine. 

 Dr. Jeffrey Barnard, the chief medical examiner for Dallas County and the director of the
Southwestern Institute of Forensic Sciences, performed the autopsy of Brown. Dr. Barnard said
Brown's death was the result of the blunt force injuries and severe blood loss (nearly half his blood
volume) that Brown sustained in the automobile accident. 

 We believe this evidence was legally and factually sufficient to prove, beyond a reasonable
doubt, that Landis, on or about December 8, 2006, operated a motor vehicle while intoxicated (by
reason of ingesting alcohol, marihuana, other controlled substances, or any combination thereof), and
by reason of that intoxication, by accident or mistake, caused the death of Brown. Accordingly, we
overrule Landis's challenges to the evidentiary sufficiency.

IV. Conclusion

 For the reasons stated, we overrule each of Landis's appellate issues and affirm the trial
court's judgment.


 Bailey C. Moseley

 Justice



Date Submitted: November 12, 2008

Date Decided: November 13, 2008


Do Not Publish
1. We also note that Landis did not object to the admission of State's Exhibit 11, which
included the plastic bag containing the marihuana at issue.