NUMBER 13-05-400-CV

 

                         COURT
OF APPEALS

 

               THIRTEENTH
DISTRICT OF TEXAS

 

                  CORPUS
CHRISTI - EDINBURG

___________________________________________________________________

 

                 IN THE MATTER OF P. A. P., A JUVENILE

___________________________________________________________________

 

   On appeal
from the Juvenile Court of Live Oak County,
Texas.

___________________________________________________  _______________

 

                     MEMORANDUM
OPINION[1]

 

         Before
Chief Justice Valdez and Justices Rodriguez and Garza

                      Memorandum
Opinion by Justice Rodriguez

 








This is an appeal of a judgment adjudicating appellant, P.A.P., a
juvenile, delinquent based on a finding of true to the charge of assault
causing bodily injury to a disabled person. 
See Tex. Pen. Code Ann. ' 22.04(a) (Vernon
Supp. 2005).[2]  Appellant was sentenced to a forty-five to
sixty day program at Adam's House substance abuse treatment facility, intensive
supervision probation with electronic monitoring for three to six months, and
then probation until his eighteenth birthday. 
By two issues, appellant complains of the sufficiency of the
evidence.  We affirm.

I.  Facts

In this case, there is testimony that, at first, there was a
"shoving match" between appellant and the victim, started by the
victim.  Words were exchanged.  The victim testified that later, when he was
asked to leave the trailer home where he was visiting friends, appellant
"just started hitting me and stuff and started hitting me while I was on
the ground."  Appellant hit him in
the head and nose with his fists and started kicking him while he was on the ground.  He told appellant to stop, but appellant did
not listen.  The victim testified that
while being hit, he was trying to protect himself and did not fight back.

An eye witness testified that appellant was standing in the front yard
telling the victim to come outside and calling him names "like retarded .
. . disabled."  She testified that
the victim was not trying to fight appellant. 
After her brother asked the victim to leave their home, she saw
appellant and the victim fighting.  The
victim was hit in the head by appellant's knee, and appellant kicked the victim
from his head to his waist.  The victim
was lying on the ground crying and screaming "Stop! Stop! Stop!"  She testified that appellant kept kicking the
victim until a neighbor arrived and helped the victim up and inside the trailer
home.








The neighbor, a second eyewitness, testified that he ran outside when
someone told him "they were beating up [the victim] outside."  He saw appellant and appellant's brother
standing over the victim and punching and kicking him on his upper body, for a
couple of seconds.  The victim was
"crying, screaming, telling them to stop."  The eyewitness testified that he pushed
appellant off the victim, picked the victim up, told him to get inside, and
told appellant and his brother to leave.

Another neighbor
testified that she saw the victim earlier that day and that he was arguing with
appellant's brother and saying he wanted to "jump" appellant and his
brother.  She also testified that when
the victim left her house that afternoon, he went next door and started
drinking.  She did not see the fight.

Appellant's
brother testified that the victim hit appellant, that he saw the victim
"push in between [appellant], and then [appellant] hit him back, and then
it was just on."  According to
appellant's brother, the victim was trying to bear hug appellant who was trying
to get the victim off of him and that is when the victim fell to the
ground.  Appellant's brother testified
that at the end, the victim was saying he was sorry,  asking if appellant was okay, and claiming
that appellant started the fight. 
Appellant's brother also testified that they left so that appellant
could go to work.  They did not call the
police and did not seek medical assistance.








The eyewitnesses testified as to the following injuries:  "[i]t seemed like B like red marks
everywhere on [the victim's] face"; the victim was bleeding "[f]rom
his nose and his mouth;" and there
were injuries "[a]round his eyes; a couple of bumps on his
head."  The police officer who
responded to the call for assistance testified that when he first observed the
victim sitting on the couch, he noticed "blood around his mouth from both
nostrils.  He had blood on one ear.  Both temples were swollen, and there were a
couple of lacerations on his neck and on his head in his scalp area."

Evidence
regarding the victim's disability included the victim's testimony that he was
twenty-two years old, does not know how to read, lives with his family, is
unable to provide himself with food, shelter, or medical care because of his disability,
and has a mental disability.  The
victim's father also testified that his son has always lived with one of his
parents, has never lived on his own, and has been mentally disabled since
birth.  He, too, testified that his son
is unable to provide himself with food, shelter or medical care.  The victim's father testified that
"[b]ecause of his disability [his son] needs somebody to always . . . help
him."  Additionally, Merl Moore, an
education diagnostician, testified that she evaluated the victim in 1994, 1996,
and again in 1999.  Over appellant's
objection as to the remoteness of the testing, Ms. Moore testified that based
on her evaluations and tests performed on the victim, he was a trainable
mentally retarded child with a score of 42. 
According to Ms. Moore, this score qualifies as a mental disease or
defect.  The results of the Vineland
Adaptive Behavior Scale revealed that the victim's social skillsBincluding how he gets along with people, how he
communicates, and how he performs his daily life skillsBwere functioning at about a nine-year-old level.

 








II.  Standard of Review

"In the adjudication phase of a juvenile case, the criminal legal
and factual sufficiency standards of review are employed."  In re J.D.P., 85 S.W.3d 420, 422 (Tex.
App.BFort Worth 2002, no
pet.).  When we review a legal
sufficiency of the evidence point of error, we view all the evidence in the
light most favorable to the prosecution to determine whether any rational trier
of fact could have found the essential elements of the offense beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 318-19 (1979); Coleman v. State, 131 S.W.3d 303, 307 (Tex.
App.BCorpus Christi 2004,
pet. ref'd).

Evidence is factually insufficient only when the evidence as to an
element is so obviously weak as to undermine confidence in the fact-finder's
determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof.  Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); Coleman, 131
S.W.3d at 307.  "We are not bound to view the evidence
in the light most favorable to the prosecution and may consider the testimony
of all the witnesses." Coleman, 131 S.W.3d at 307 (citing Johnson,
23 S.W.3d at 10‑12).  It is
appropriate to disagree with the fact finder's determination only when the
record clearly indicates that such a step is necessary to arrest the occurrence
of a manifest injustice.  Id. at
307-08 (citing Johnson, 23 S.W.3d at 10‑12).  "Otherwise, due deference must be
accorded the fact finder's determinations, particularly those concerning the
weight and credibility of the evidence." 
Id. at 308.








We measure the sufficiency of the evidence by the elements of the
offense as defined by the hypothetically correct jury charge.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997) (applying principle to legal sufficiency review); Coleman,
131 S.W.3d at 307 (same); Adi v. State, 94 S.W.3d 124, 141 (Tex. App.BCorpus Christi 2004,
pet. ref'd) (applying principle to factual sufficiency review).  Such a charge would accurately set out the
law, would be authorized by the indictment, and would not unnecessarily
increase the State's burden of proof.  Malik,
953 S.W.2d at 240.

II.  Analysis








By his first
issue, appellant generally contends that the evidence is factually insufficient
to prove that he committed the offense of assault causing bodily injury to a
disabled person, as charged.  The State's
petition alleged, in part, as follows: 
"[appellant], while a minor, did then and there intentionally or
knowingly cause bodily injury to [the victim], a disabled individual, by
hitting and kicking [the victim] in the face."  See Tex.
Pen. Code Ann. ' 22.04(a) (Vernon
Supp. 2005).  Reviewing the evidence set
out above in a neutral light and giving due
deference to the fact finder's determinations, particularly those concerning
the weight and credibility of the evidence, we cannot conclude that the evidence is so
obviously weak as to undermine confidence in the fact-finder's determination,
or the proof of guilt, although adequate if taken alone, is greatly outweighed
by contrary proof.  See Johnson,
23 S.W.3d at 11; Coleman, 131 S.W.3d at 308.  Thus, we conclude the evidence
is factually sufficient to establish appellant
committed the offense of assault causing bodily injury to a disabled person.  Appellant's first issue is overruled.

By his second issue, appellant challenges the legally sufficiency of
the evidence to establish that the victim was a disabled person "who by
reason of age or physical or mental disease, defect, or injury is substantially
unable to protect himself from harm or to provide food, shelter or medical care
for himself."  Tex. Pen. Code Ann. ' 22.04(c)(3) (Vernon Supp. 2005).  Appellant contends that we should strike the
victim's testimony as a matter of law because, as a severely mentally retarded
person, (1) he is incompetent to testify, (2) the trial court did not conduct a
competency determination sua sponte, and (3) the State did not rebut the
presumption in Texas Rule of Evidence 601 that a mentally disabled person is
presumptively incompetent to testify.  See
Tex. R. Evid. 601.








However, the victim was not the sole witness to testify regarding his
disability.  His father and Ms. Moore,
the education diagnostician who evaluated the victim, also provided testimony.  The
victim's father testified that his son was unable to provide himself with food,
shelter, or medical care, and that he had been disabled since birth.  Ms. Moore evaluated the victim and testified
that he was a mentally retarded child, with a score of 42 that qualified as a
mental disease or defect.  She also
testified that the victim functioned at a nine-year-old level when he was
tested in the mid-to-late 1990's.[3]  Therefore, even if we were to disregard the
victim's testimony, viewing the remaining evidence in the light most favorable
to the prosecution, we conclude that a rational trier of fact could have found beyond
a reasonable doubt that the victim was disabled.  See Jackson, 443 U.S. at 318-19; Coleman,
131 S.W.3d at 307.  Thus, the evidence is
legally sufficient to establish the victim's disability.  Appellant's second issue is overruled.

The judgment of
the trial court is affirmed.

 

NELDA
V. RODRIGUEZ

Justice

 

Memorandum Opinion delivered
and 

filed this 23rd day of
March, 2006.











[1]See Tex.
R. App. P. 47.4.





[2]Section 22.04(a)(3) provides, in
relevant part, that "[a] person commits an offense if he intentionally,
knowingly, recklessly, or with criminal negligence, by act . . . causes to a .
. . disabled individual . . . bodily injury."  Tex.
Pen. Code Ann. ' 22.04(a)(3) (Vernon Supp.
2005).  This section defines
"disabled individual" as "a person older than 14 years of age
who by reason of age or physical or mental disease, defect, or injury is
substantially unable to protect himself from harm or to provide food, shelter
or medical care for himself."  Id.
' 22.04(c)(3).





[3]Appellant also appears to be
arguing that the trial court erred in admitting Ms. Moore's testimony because
it involved evaluations that were remote in time.  However, in accordance with rule 38.1(h) of
the Texas Rules of Appellate Procedure, we will only consider contentions that
are supported by clear and concise arguments with appropriate citations to
authorities and to the record. Tex. R.
App. P. 38.1(h). Because this argument is inadequately briefed, it will
not be considered.