# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00304-CR

**Francisco Nava Victoriano, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
### NO. D-1-DC-05-500429, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Francisco Nava Victoriano of aggravated sexual assault.  *See* Tex.
Penal Code Ann. § 22.021(a)(1)(A)(i), (a)(2)(A)(ii) (West Supp. 2006).  Victoriano elected to have
punishment determined by the trial court, which assessed his sentence at forty years' confinement
in the Institutional Division of the Texas Department of Criminal Justice.  In his sole point of error,
Victoriano argues that the evidence presented at trial is factually insufficient to support his
conviction.  We will affirm the judgment of the district court.

## BACKGROUND

On the evening of August 6, 2005, eighteen-year-old C.R. and her fiancé, Christopher
Chapa, attended a quinceañera[1] in Pflugerville.  The couple left the quinceañera around midnight and

---

[1] A quinceañera is a celebration of a young woman's fifteenth birthday.

drove to Chapa's uncle's house to visit. Victoriano, who was a friend of Chapa's uncle, was at the house when C.R. and Chapa arrived. C.R. testified that the three men were drinking in the garage but that she did not drink at Chapa's uncle's house, although she consumed some beer at the quinceañera. Victoriano testified that all four were drinking alcohol and that marijuana and cocaine were being consumed.

Around 5:00 a.m., C.R. and Chapa left Chapa's uncle's house in C.R.'s truck to return to their apartment. Victoriano insisted on following the couple in his truck, saying that he wanted to make sure they arrived home safely. C.R. and Chapa stopped at a fast food restaurant on their way home; C.R. got out of the truck in the parking lot and walked to a nearby gas station. C.R. testified that she and Chapa were having an argument and that she went to the gas station to call Chapa's mother, Della Perez, from a pay phone to see if she would be willing to pick C.R. up.

As C.R. was walking across the gas station parking lot to reach the pay phone, Victoriano pulled up in his truck and asked her what happened. When C.R. told him, Victoriano volunteered to drive her to Perez's house and allowed her to use his cell phone to call Perez. Perez told C.R. on the phone that it would be all right for Victoriano to drive her to Perez's house. C.R. got in the truck with Victoriano, and he began driving toward Perez's house in Pflugerville, which is five to ten minutes away from the gas station.

As they approached Perez's house, Victoriano missed a turn and started driving out of the residential neighborhood toward an isolated area of fields near Northeast Metropolitan Park. C.R. testified that she told Victoriano that he had missed the turn and asked him why he kept going and that Victoriano replied that he was looking for a place to turn around. C.R. stated that

2

Victoriano stopped the truck near the park, turned off the lights and engine, and told her to "come here." C.R. testified, "I started screaming and I said 'no' and I jumped out of the truck." She said that she started running toward Perez's house, but Victoriano caught her, grabbed her, and pulled her into the field. C.R. testified, "I tried to get away. I said 'no' and I kept struggling to get away."

C.R. stated that Victoriano tried to take off her pants and rip off her shirt. He was unable to remove her pants completely; however, he broke the button and zipper, and C.R. testified, "my pants came halfway down, and he kept touching me and he put one of his fingers in my butt." C.R. said that a car drove by and she attempted to scream for help, but Victoriano pushed her face into the dirt. C.R. testified that she then began telling Victoriano "what he wanted to hear"; she said that there was a better place down the road. They got back into Victoriano's truck, and he began driving; however, he quickly realized that C.R. was trying to get him to drive closer to Perez's house and stopped the truck.

C.R. testified that, at that point, she got out of the truck again and ran toward the front of the truck. She said that Victoriano caught her and tried to pull her back into the field; she grabbed the license plate of his truck for leverage but had to let go after her fingers were sliced open, causing her to bleed profusely. C.R. stated that she then tried to grab a construction barrel so that Victoriano would not be able to pull her back into the field. Eventually, however, Victoriano was able to do just that.

C.R. testified that Victoriano continued touching her, telling her to be quiet, and trying to have sex with her. She testified that another car drove by and that Victoriano pushed her head into the dirt again. C.R. said that it became obvious that "my clothes weren't coming off. I

3

wasn't going to stop." She testified that Victoriano then told her that he was going to take her back because he liked her. They got back in Victoriano's truck, and Victoriano started driving back toward Perez's house. When Victoriano passed by the turn again, C.R. jumped out of the moving truck; she testified that Victoriano kept driving and hit her leg with the tire of his truck.

C.R. started running from house to house, knocking on doors pleading for help. C.R. testified that she heard Victoriano's truck roaming the neighborhood looking for her and that she had to hide from him behind cars multiple times. Finally, C.R. knocked on Travis Muñoz's door; he let her in and called the police. Muñoz testified that when C.R. arrived at his door, she was "bloody, crying, just nerve wracked"; C.R. told Muñoz that someone had attempted to rape her.

C.R. called Perez from Muñoz's house; she arrived within minutes. Perez testified that C.R. "had her hand all cut up, she was full of blood, her hair was matted, her blouse was ripped, her pants were ripped open." Perez stated that C.R. told her that Victoriano tried to rape her and "stuffed his finger in her anus"; Perez described C.R. as "hysterical" and "distraught."

The police arrived shortly thereafter, as did the paramedics who transported C.R. to North Austin Medical Center where her injuries were treated. C.R. was later taken to Saint David's Hospital so that a sexual assault examination could be performed. Julie Gibbs, the sexual assault nurse examiner, testified that "C.R. had pretty extensive trauma or injury to her body." Gibbs stated that C.R.'s hand was bandaged and had been stitched at North Austin Medical Center. She also testified that C.R. had a large bruise on her left leg and multiple scratches, bruises, and abrasions over her body. Gibbs stated that C.R. described her struggle with Victoriano and related that "he inserted his finger into her anus." During the sexual assault examination, Gibbs took swabs of C.R.'s saliva and swabs from her anus, nipples, face, and underneath her fingernails.

4

Police investigators discovered a trail of blood leading from Muñoz's house to the street where C.R. claimed that she jumped out of Victoriano's truck, including finding blood on the door of one of Muñoz's neighbors. Investigators also observed a substance that appeared to be blood in three places in the area near the park: on the side of the road, on a construction barrel, and on an area of grass in the field that was recently trampled. Laboratory testing indicated that DNA from blood found in the interior and on the license plate of Victoriano's truck matched C.R.'s DNA and that a swab of DNA taken from C.R.'s breast during the sexual assault examination was consistent with a mixture of C.R.'s and Victoriano's DNA.

Victoriano took the stand in his own defense and told a different story. He testified that after he missed his turn, he was looking for an appropriate place to turn around because his truck is long. He stated that C.R. "was scared, really. She was afraid that I was going to do something to her." Victoriano testified that C.R. jumped out of the truck when he was turning around. He said that he went to get her and grabbed her by the hand to bring her back to the truck. Victoriano testified that he pulled C.R.'s shirt and it ripped. He also said that he fell on top of her as he was trying to catch her, which is how he explained his DNA being found on her breast. Victoriano stated that his hand must have slid when he pulled C.R., leading to the button being torn off her pants. He testified that when he got back in the truck, she ran away again.

Victoriano said that he attempted to physically bring C.R. back to the truck again, but she grabbed his license plate. He testified that he pulled her off the license plate, which must have been how she cut her hand. Victoriano said that they both got back in the truck, and he drove toward Perez's house. He testified that he missed the turn again because he was drunk and that C.R. jumped out of his truck and started knocking on doors of the houses in the neighborhood.

5

Victoriano argues that the evidence presented at trial is factually insufficient to support his conviction. Specifically, he argues that the element of penetration was not proved beyond a reasonable doubt. The State alleged in the indictment that Victoriano caused the penetration of C.R.'s anus with his finger. *See* Tex. Penal Code Ann. § 22.021(a)(1)(A)(i). Victoriano argues that because an anal swab taken during C.R.'s sexual assault examination did not produce any identifiable DNA, proof of penetration "comes down to a swearing match."

In reviewing a factual sufficiency challenge, an appellate court must view all the evidence in a neutral light and determine whether the verdict is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). This review must employ appropriate deference to ensure that the appellate court does not substitute its judgment for that of the jury; the evaluation must not substantially intrude on the jury's role as the sole judge of the weight and credibility given to witness testimony. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).

A complainant's testimony, taken alone, is sufficient to support a jury finding of penetration beyond a reasonable doubt. *Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978); *Tinker v. State*, 148 S.W.3d 666, 669 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Here, C.R.'s testimony that Victoriano penetrated her anus with his finger was corroborated by other evidence. Perez and the sexual assault nurse examiner both testified about what C.R. told them concerning the assault; both accounts were substantially similar to C.R.'s trial testimony. In addition, physical evidence was consistent with C.R.'s account of what transpired. Photographs showing C.R.'s injuries were introduced into evidence; the photographs showed severe cuts on

C.R.'s hands, a large bruise on her leg, and other bruises and abrasions. Muñoz testified that C.R. arrived at his door bloody and crying. Perez testified that when she arrived at Muñoz's house, C.R. was covered in blood, her blouse was ripped, and her pants were ripped open. Also, the trail of blood from Muñoz's house and the blood found in the field near the park were consistent with C.R.'s version of events. Finally, as mentioned above, C.R.'s blood was found in the interior and on the license plate of Victoriano's truck, and the DNA sample taken from C.R.'s breast was consistent with a mixture of C.R.'s and Victoriano's DNA.

The jury apparently determined that C.R.'s testimony was more credible than Victoriano's. Especially given the corroborating evidence, we cannot say that the verdict is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. We overrule Victoriano's point of error.

## CONCLUSION

Having found the evidence supporting Victoriano's conviction factually sufficient, we affirm the judgment of the district court.

_____

Diane Henson, Justice

Before Chief Justice Law, Justices Puryear and Henson

Affirmed

Filed:  January 31, 2007

Do Not Publish

7