# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-07-00326-CR

**Marvin Wilford, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
NO. D-1-DC-06-301222, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING

**M E M O R A N D U M   O P I N I O N**

A jury convicted appellant Marvin Wilford of aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. § 22.02(a)(2) (West Supp. 2008). He was sentenced to ten years in prison. In one point of error, Wilford contends that the evidence was factually insufficient to support a finding of guilt. We affirm the district court's judgment.

Marvin Wilford and Renee Williams began dating in 2004 and began living together in August 2005. According to Williams's testimony, on the morning of April 28, 2006, Wilford entered the house with food he had picked up for Williams. When he entered the house, Williams was lying on the couch and refused to get up. Angered, Wilford began yelling and hitting the couch. This prompted Williams to stand up. When Williams stood up, Wilford grabbed her, knocked her to the ground, straddled her, put his hands on her neck, and began to choke her. Williams testified that she was unable to breathe while Wilford choked her.

When Wilford eventually released her, Williams stood up and went upstairs to her room to change. She testified that Wilford followed her, ripped off her shirt, and threw her to the ground, causing her to sustain an injury to her shoulder. Wilford went downstairs, ate, returned to Williams's room to apologize, and left the house. Williams testified that she stayed in bed for the rest of the day. The next day, Stephanie Brown, Williams's sister, went to Williams's house to check on her. Brown testified that Williams "could not move" and appeared "agitated" and "in pain." Later that afternoon, Williams's mother arrived and called the police.

Officer Earl White, the responding officer, arrived at the house. All three women—Brown, Williams, and their mother—were standing in the yard. Williams was uncooperative, telling White that her mother and sister had called the police. White testified that he observed bruising on Williams's neck and that the bruises appeared to be "fresh injuries."

Detective Patrick Connor was assigned to handle the case. He testified that, when he first contacted Williams on May 1, she was unwilling to speak with him, telling him that she had hurt her arm and that her mother had contacted the police. Williams refused to provide any additional information. Later, on June 1, Williams called Connor to give him her statement, relating a story consistent with her trial testimony.

On June 4, Williams also visited the emergency room, complaining of hoarseness and tenderness in her throat resulting from the April 28 incident. Although the attending physician, Dr. Ronald Kim, noted no obvious bruising or swelling or abnormalities on the CT scan, he testified that Williams's signs and symptoms could be consistent with the alleged events of April 28.

2

A jury found Wilford guilty of aggravated assault, and Wilford was sentenced to ten years in prison. Wilford appeals, challenging the factual sufficiency of the evidence to support the jury's verdict.

In a factual-sufficiency review, the evidence is reviewed in a neutral light. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007). Evidence is factually insufficient (1) when the evidence supporting the verdict is so weak that the verdict seems clearly wrong and manifestly unjust; and (2) when the supporting evidence is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. *Id.* An appellate court must be appropriately deferential to the jury's verdict, in order to avoid substituting its own judgment for that of the fact finder. *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). We may not re-weigh the evidence and substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).

The jury found, as alleged in the indictment, that Wilford "intentionally, knowingly and recklessly cause[d] bodily injury to Renee Williams," with whom he had a dating relationship, by using his hand as a deadly weapon to choke Williams. Wilford argues that the evidence was factually insufficient to support this finding. In reviewing the sufficiency of the evidence on this point, we must consider all of the evidence to determine whether the supporting evidence is outweighed by the great weight and preponderance of the contrary evidence so as to render the verdict clearly wrong and manifestly unjust. *Roberts*, 220 S.W.3d at 524. In response, the State points to evidence of two injuries Williams allegedly sustained from the assault: an injury to the shoulder and an injury to the neck. The State presented evidence from witnesses present on the day

of the alleged assault, April 28, and on the following day, including Williams's testimony, testimony from the responding officer, and testimony from Williams's relatives.

Earl White, a senior patrol officer with the Austin Police Department who responded to the incident, testified that Williams was uncooperative. According to White, Williams refused to discuss the incident with him, telling him that her mother and sister had called police. However, White testified that Williams had injuries around her face or neck area and that they looked "fresh."

Two of Williams's relatives—her sister and her mother—were also present at the scene on April 29. Brown testified that, on April 29, 2006, she visited Williams's residence, noting that Williams and Wilford were living together at the time. According to Brown, she found her sister in bed. Williams "could not move" and appeared "agitated" and "in pain." Her neck was bruised, and the injury appeared to have been sustained recently. When the sisters' mother arrived, Brown and their mother called 911.

Williams also testified. According to her, Wilford had moved in with her in August 2005. On the morning of April 28, 2006, Wilford entered the house with food. Williams was lying on the couch at the time, and when she refused to get up to look at the food, Wilford became angry, "cursing [her] out" and "hitting on the couch." At that point, Williams got up. Wilford straddled her, pushed her to the ground, put his hands on her neck, and started choking her. Williams testified that she was unable to breathe. When Wilford finally released her, Williams went upstairs to change. According to Williams, Wilford tore her shirt off of her and threw her on the ground, injuring her shoulder.

In support of his argument, Wilford points to an inconsistency in Williams's testimony. The photos taken after the incident show a scar or scratch on Williams's left shoulder, the injury she allegedly sustained when Williams threw her down on the ground. On direct examination, however, Williams indicated that her right shoulder had been injured, not her left. When, on cross examination, Williams appeared unable to remember which shoulder had sustained the injury, she explained that she had sustained the injury more than a year earlier and could no longer immediately remember which shoulder had been injured.

Wilford also points to physical evidence from Dr. Kim. Although the alleged incident occurred on April 28, Dr. Kim's examination of Williams was on June 4, over a month later. According to Dr. Kim, Williams was complaining of lingering hoarseness and pain in swallowing resulting from the incident. Dr. Kim's exam, including a CT scan, indicated no obvious bruising or swelling or any obvious signs of strangulation. The only symptoms present at that time were tenderness in the neck area and hoarseness. Dr. Kim testified, however, that the observed signs and symptoms—or lack thereof—could be consistent with a strangulation that occurred more than a month earlier.

Wilford also questions Williams's credibility. He argues that, although the alleged incident occurred on April 28, Williams did not report it until June 1. He also points out that when Williams did finally come forward, it was the morning after Williams had a confrontation with him and exhibited aggressive behavior toward Wilford's new girlfriend—suggesting Williams may have had a motive to fabricate the story. Also, Wilford argues that, although Williams testified that she was afraid of him, her actions indicate otherwise. He points to testimony that on the day before

5

Williams reported the April 28 incident, she had voluntarily approached and spoken with Wilford without exhibiting any fear of him. The jury also heard expert testimony, however, that victims of domestic violence commonly do not come forward immediately. In addition, the jury heard testimony that there had been a subsequent choking incident on May 26, which could also have been the impetus for Williams to report the April 28 incident.

There is evidence that Williams was the victim of aggravated assault on April 28. Although Wilford points to some evidence that could allow a fact finder to conclude otherwise, it is not such that it renders the jury's verdict clearly wrong and manifestly unjust. *See id.* at 524. The decisions as to which of a number of reasonable interpretations to give conflicting testimony as well as how much weight to give each witness's testimony were the jury's. *Johnson v. State*, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000). As we may neither substitute our own judgment for that of the fact finder nor re-weigh the evidence, we conclude that the evidence is factually sufficient to support the jury's verdict. *See King*, 29 S.W.3d at 562; *Vasquez*, 67 S.W.3d at 236.

Wilford's point of error is overruled, and the judgment of conviction is affirmed.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed: August 29, 2008

Do Not Publish

6