Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-09-00342-CR

Richard James **SPEED**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2008CR3268
Honorable Mary D. Román, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
              Sandee Bryan Marion, Justice
              Rebecca Simmons, Justice

Delivered and Filed: February 3, 2010

AFFIRMED

Richard James Speed was convicted by a jury of aggravated assault with a deadly weapon. The sole issue presented on appeal is whether the evidence is factually sufficient to support the conviction. We affirm the trial court's judgment.

In conducting a factual sufficiency review, this court views all of the evidence in a neutral light and sets aside the verdict only if: (1) the evidence is so weak that the verdict is clearly wrong

and manifestly unjust; or (2) the verdict is against the great weight and preponderance of the evidence. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). "[D]ue deference must be accorded the fact finder's determinations, particularly those determinations concerning the weight and credibility of the evidence," and a reviewing court's disagreement "with the fact finder's determination is appropriate only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice." *Id*. at 9.

Speed shot the complainant, Kenneth Law, through the door to Speed's home. Speed's defense was that he was justified in using deadly force. The jury was properly charged that Speed would not be justified in using deadly force if the State proved beyond a reasonable doubt that Law was not attempting to enter Speed's trailer unlawfully and with force. *See* TEX. PEN. CODE ANN. § 9.32 (Vernon Supp. 2009).

Law testified that Speed lived with him for several years. After Law's mother moved from a trailer Law purchased for her, Speed moved into the trailer. Speed worked for Law's security business on Saturdays as a non-commissioned guard. One Saturday, Law and another of his employees went to Speed's trailer and found Speed drunk. Law told Speed he had to work that day because he needed all of the employees, but Law moved Speed's shift back four hours to allow him time to sober up. Speed never showed up to work. Law finished working around 2:30 a.m. the following morning. At some point, Law left Speed a message, cursing him and stating that he was so irate with Speed he ought to just go and rip or jerk him out of the trailer.

Earlier on Saturday evening, Speed called 911 and told the dispatcher that his friend had forced his way into his trailer and was trying to force him to go to work. Speed told the dispatcher he did not know whether he should shoot his friend. When Officer Robert Flathers arrived at the

trailer, Speed denied having a gun or wanting to shoot anybody. Speed told Officer Flathers that his boss was riding him and wanting him to work long hours. Speed further stated that his boss had broken through his door. Sergeant Martin Tobin, who responded to the 911 call with Officer Flathers, inspected the door and found no damage. Sergeant Tobin stated that Speed was very intoxicated and agitated. Speed was told to call the police if his boss returned, and his boss would be issued a criminal trespass warning.

Law testified that he went to Speed's trailer around 2:00 p.m. on Sunday. When Law arrived at the trailer, he left his gun in his truck and had nothing in his hands. After Law knocked on the door, Speed shot him through the closed door with a shotgun. Law testified that he did not try to force his way into the door or damage the door in any way.

On cross-examination, Law admitted that at the time he was shot, he was six feet tall and weighed 260 pounds. Because he lost most of his stomach as a result of the shooting, he weighed 120 pounds at the time of trial. Law denied Speed's allegation that he had gone to Speed's trailer the Friday before he was shot, ripped the door open, and grabbed $2,000. Law also denied ever holding a gun to Speed's head.

Shannon Adams was outside his sister's trailer when he heard a gunshot. Adams looked over and saw Law slumped over on the porch. While Adams was helping Law, Adams testified that Speed came back outside with the shotgun and threatened to shoot again. Adams said Speed was irate and kept screaming that he was tired of being taken for money and of being abused.

Speed testified that the Friday before the shooting, Law forced his way into the trailer and took $2,000 from Speed. Speed weighed 127 pounds. Speed testified that Law had pointed a gun at him twice. Speed testified he was asleep when Law arrived and began jerking on the door, which

had cowbells on it. Speed testified that he "just went over there and shot through the door." In response to whether he was in fear for his life, Speed responded that he was. Although Speed initially denied drinking that morning, he later admitted he had a few drinks of beer. Speed's videotaped statement was played for the jury in which Speed admitted he looked through the window and saw Law. Speed stated that he knew Law did not have a gun because he saw him through the window in the door; however, at trial, Speed testified that he did not know whether Law had a weapon. Speed further stated that Law was pounding on the door, but he did not hear Law say anything. Speed testified that he shot Law because Law was trying to pull the door open.

Although Speed testified that Law was jerking on the door, the jury could have chosen to believe Law's testimony that he simply knocked on the door. *See Johnson*, 23 S.W.3d at 9 (noting jury's determinations concerning credibility of evidence must be accorded due deference). In addition to other inconsistencies in the testimony, Speed's testimony that Law was jerking on the door was inconsistent with his own videotaped statement in which he stated Law pounded on the door. Having reviewed all of the evidence in a neutral light, we conclude that the evidence does not demonstrate that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, nor is the proof of guilt greatly outweighed by contrary proof. *See id*. at 11. Therefore, the evidence is factually sufficient to support the jury's implicit finding that Law was not attempting to enter Speed's trailer unlawfully and with force.

The trial court's judgment is affirmed.

Catherine Stone, Chief Justice

DO NOT PUBLISH